Timothy G. GALBRAITH and
Margaret Galbraith,
Appellants,

v.

**ALLIED MUTUAL INSURANCE COMPANY, A Division of Nationwide Insurance Company, Appellee.**

No. 03–1065.

Supreme Court of Iowa.

June 24, 2005.

Warren L. Bush, Wall Lake, for appellants.

James W. Redmond and Rosalynd J. Koob of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, for appellee.

CARTER, Justice.

Timothy G. Galbraith, a personal-injury claimant in the district court, and his wife Margaret Galbraith, as a consortium claimant, appealed from an adverse summary judgment in their action against Allied Mutual Insurance Company (Allied). The Galbraiths allege bad faith by an insurer in delaying payment of underinsured motorist benefits. The district court had granted summary judgment for the insurer, and the court of appeals reversed that decision.

After reviewing the record and considering the arguments presented, we vacate the decision of the court of appeals and affirm the judgment of the district court.

Timothy Galbraith was injured on April 23, 1998, when a pickup driven by Wendell Warntjes crossed the centerline of the road and struck the vehicle that Galbraith was operating. Galbraith sustained head injuries in the collision. He later sued Warntjes and Warntjes' wife, who was the co-owner of the vehicle Warntjes was operating. The Galbraiths later amended their petition to assert that Warntjes was acting within the course of his employment with Scott Guy at the time the collision occurred. Guy was added as a defendant to the Galbraiths' claim, as was Allied, based on a claim that the defendants were underinsured. The district court severed the claim against Allied to be tried after the claims against the other defendants were resolved.

The underinsured-motorist provisions in the Galbraiths' policy with Allied provided:

[Allied] will pay all sums which an "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle" resulting from "bodily injury" to any person caused by an accident.

. . . .

[Allied] will only pay after an "insured's" rights to the proceeds of all liability insurance bonds or policies have been determined by judgment or settlement agreement.

On April 30, 2001, Allied was informed by the Galbraiths' counsel that the Warntjeses' liability insurer had offered to pay its policy limits of $100,000 to settle the claim. The letter indicated the belief that Guy's policy did not provide coverage for Warntjes and that it was anticipated that no other liability insurance was applicable

to this claim through either Guy or the Galbraiths. The April 30 letter contended that the Galbraiths' total damages exceeded $150,000 and demanded payment of Allied's policy limits of $50,000.

Allied then sought to take Guy's deposition concerning the existence of other liability insurance. On May 4 counsel for the Galbraiths wrote counsel for Allied and stated it would be necessary to obtain a sworn statement from Guy in order to settle the claims against the parties other than Allied. That letter further indicated that, if Allied did not tender its policy limits when that settlement was concluded, the Galbraiths' petition against Allied would be amended to assert a bad-faith claim. Before Guy's affidavit had been received and prior to the time the case was settled, the Galbraiths on May 21 moved for leave of court to amend their petition and assert a bad-faith claim against Allied for refusal to tender its policy limits.

While the application for leave to amend was pending, Allied on June 11 offered $25,000 (in addition to $5000 of medical payments already received by the Galbraiths) in order to settle its underinsured-motorist liability. On June 15, 2001, counsel for the Galbraiths wrote to counsel representing Allied declining the $25,000 offer and indicating that they intended to proceed with the prosecution of their bad-faith claim. This letter indicated that a signed affidavit had been obtained from Guy stating that he had no liability insurance coverage for the Galbraiths' claims. The letter further stated "the Galbraiths have now agreed to accept $100,000.00 from the insurance carrier (Hawkeye Security) for Warntjes and intend to fully release Warntjes and Hawkeye Security."

On June 25 Allied tendered its policy limits to the Galbraiths in settlement of its underinsured-motorist liability to those insureds. As provided in the policy, the $50,000 policy limit was reduced by the $5000 in medical payments already received by the Galbraiths. On June 27 the district court granted the Galbraiths' application for leave to amend their petition and assert a bad-faith claim against Allied.

Allied filed a motion for summary judgment concerning the bad-faith claim pending in the district court. The court initially overruled that motion on the ground that there were issues of material fact with regard to whether the extent of the Galbraiths' claims against the tortfeasor were so clearly established that Allied acted in bad faith by delaying payment. Allied filed a motion to reconsider the court's summary-judgment ruling. In reconsidering the summary judgment motion, the court focused not only on the strength of the Galbraiths' claims against the tortfeasor but also on the timing of Allied's decision to tender its policy limits.

The district court noted in this regard that the settlement agreement between the Galbraiths, the Warntjeses, Guy, and Hawkeye Security Insurance Company had not been completed until June 28, 2001. This was three days after Allied had already tendered its policy limits. The district court concluded that Allied had no obligation to make payments under its underinsured-motorist coverage until final settlement of the claims against the alleged tortfeasors. Based on that premise, the court sustained Allied's motion for summary judgment.

### I. Scope of Review.

■ Our review of summary judgment rulings is for correction of errors at law. *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.,* 586 N.W.2d 325, 329 (Iowa 1998); Iowa R.App. P. 6.4. We must determine whether, based on the undisputed material facts, the moving party

is entitled to judgment as a matter of law. *Am. Soil Processing,* 586 N.W.2d at 329; *Hegg v. Hawkeye Tri–County REC,* 512 N.W.2d 558, 559 (Iowa 1994).

## II. *Determination of First–Party, Bad–Faith Claims.*

 In first-party, bad-faith claims, the plaintiff must show (1) the absence of a reasonable basis for denying the claim, and (2) the insurer knew or had reason to know that its denial was without a reasonable basis. *Thompson v. United States Fid. & Guar. Co.,* 559 N.W.2d 288, 291 (Iowa 1997); *Morgan v. Am. Family Mut. Ins. Co.,* 534 N.W.2d 92, 96 (Iowa 1995). In determining whether issues of material fact exist for purposes of deciding motions for directed verdict or for summary judgment made by insurers sued for bad faith, the rules are the same as for other types of cases. *Thompson,* 559 N.W.2d at 290–91. This means that to succeed on such motions the insurer must demonstrate that a reasonable trier of fact could not determine that the insurer lacked a reasonable basis for denying or for delaying payment of the claim. *Id.* In resolving bad-faith issues in underinsured-motorist insurance matters, we have recognized that, if the underlying third-party tort action is fairly debatable as to either the facts or the law, this circumstance provides a reasonable basis for denial of underinsured-motorist benefits. *Wetherbee v. Econ. Fire & Cas. Co.,* 508 N.W.2d 657, 661–62 (Iowa 1993). The fact that a reasonable trier of fact could return a verdict on the tort claim in excess of other available insurance does not establish that a claim is not fairly debatable if a reasonable trier of fact could also return a verdict that would not implicate the underinsured coverage. *Id.*

 In reviewing the decision of the district court, the court of appeals concluded that it was not proper to rely on the date of the signed settlement agreement in the underlying tort action in determining when Allied became responsible for paying the Galbraiths the benefits to which they were entitled under their underinsured-motorist insurance. The court opined that a jury could find that a binding oral settlement agreement had been reached between the parties at an earlier date. The court of appeals stated the issue as follows:

> In order to uphold the district court's conclusion it must appear, as a matter of law based upon undisputed facts, that no settlement agreement occurred prior to June 25, the date Allied tendered the underinsured motorist policy limit. If there is a disputed issue of material fact regarding whether an enforceable settlement agreement was reached prior to this date, the district court must be reversed.

We must respectfully disagree with the court of appeals.

 In situations in which an underinsured-motorist claim has been paid by the insurer but a bad-faith claim is made with respect to the timing of the payment, factors other than the strength of the underlying tort suit may be of crucial significance on the issue of the insurer's bad faith. That is the situation here. An underinsured-motorist carrier cannot be expected to make payment to its insured prior to the time that the underlying tort litigation has been fully resolved and a determination has been made concerning the presence or absence of liability insurance available for payment of the claim. The insurer is not required to accept the insured's word as to such matters and may demand adequate documentation.

The fact that the Galbraiths may have been able to enforce an earlier oral agreement if no written agreement had been forthcoming did not defeat Allied's right to insist on a signed written agreement as documentation for payment of the Galbraiths' claim. Moreover, it appears that

throughout the negotiations both the Galbraiths and Allied were proceeding on the basis that the Guy affidavit was essential to the conclusion of any settlement. Allied was not advised as to the obtaining of the Guy affidavit until June 15, the time at which its earlier settlement offer was rejected. The insurer was not required to accept this affidavit as true on its face and could reasonably take additional time to investigate the provisions of Guy's liability policy with another company that had been identified in the affidavit. As the district court correctly concluded, the timing of the negotiations and the settlement were such as to preclude a determination of bad faith on Allied's part with respect to the time at which it paid the Galbraiths' underinsured-motorist claim.

We have considered all issues presented and conclude that the decision of the court of appeals must be vacated. The judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**