John Jay MORGAN, Kathleen Morgan and Penny Hill Kapinski, Appellees,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant,

State of Iowa ex rel. Civil Reparations Trust Fund, 99AG68645, Intervenor.

No. 94–151.

Supreme Court of Iowa.

June 21, 1995

Rehearing Denied July 13, 1995.

Douglas A. Haag of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

James E. Shipman and Chad M. VonKampen of Simmons, Perrine, Albright & Ell-wood, L.L.P., Cedar Rapids, and John H. Ehrhard, Cedar Rapids, for appellees.

Thomas J. Miller, Atty. Gen., Craig Kelinson, Sp. Asst. Atty. Gen., and Richard E. Mull, Asst. Atty. Gen., for intervenor State.

Randy V. Hefner of Van Werden, Hulse & Hefner, Adel, and William J. Bribriesco, Bettendorf, for amicus curiae Iowa Trial Lawyers Ass'n.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

This case involves a dispute over an insurer's responsibility to pay uninsured motorist benefits. The insureds brought suit alleging breach of contract and bad faith denial of their claim. The jury found the insurer failed to pay the benefits in bad faith and determined the amount of compensatory and punitive damages. The trial court entered judgment on the jury's verdict. The insurer appeals and the insured cross-appeals. The State of Iowa, on behalf of the Civil Reparations Trust Fund, intervened regarding the award of punitive damages. We reverse and remand.

### I. *Background.*

Plaintiffs John and Kathleen Morgan and Kathleen's daughter, Penny Hill Kapinski, (collectively "the Morgans") allege bad faith by American Family Mutual Insurance Company (American Family) for refusing to pay uninsured motorist benefits under a policy issued to John and Kathleen for injuries suffered by Penny. On August 19, 1985 Penny was driving her parents' car when another vehicle, driven by Walter Fisher (Fisher), ran a red light and broadsided her. It is undisputed that Fisher's negligence was the sole cause of the accident and that he was uninsured.

John was summoned to the scene of the accident. Although Penny bumped her head with sufficient force to dent and crack the dashboard in the collision, she told him she was all right, "just a little bit shook up and a little scared." She declined to see a doctor

and was not treated or examined by a doctor until September 9, 1985, after she fainted at school. Dr. Rega, who examined Penny that day, hypothesized that the faint was possibly the result of hypoglycemia. Penny did not seek medical attention again until April 21, 1986 when she saw Dr. Ahn. Dr. Ahn's records indicated that Penny had experienced five fainting spells and noted a working diagnosis of hysteria or seizure disorder. He requested an EEG study which came back normal. The next time Penny sought medical examination was October 15, 1986. At that time she saw Drs. Uhl and Varney at the Veterans' Administration Hospital where she worked. They suspected she might be suffering partial complex seizure disorder and referred her to Dr. Hines, a neurologist. Dr. Hines diagnosed Penny as having partial complex seizure disorder, which he believed was a result of the 1985 accident.

Finally, in December 1986 the Morgans notified American Family of Penny's injuries and their intention to make a claim for her injuries under the uninsured motorist policy. American Family requested a written loss report from the Morgans, which it received in March 1987. In the loss report Penny described her injuries as "bump on head, bruises." Dr. Hines filled out a casualty medical report indicating Penny's problems "are secondary to an auto accident" in August 1985.

Because it questioned whether Penny's seizures were related to injuries she received in the accident, American Family sought the advice of an expert. Dr. Schutta, a professor and chairperson in the Department of Neurology at the University of Wisconsin Medical School, examined the medical records American Family had collected from Penny's doctors. Dr. Schutta's review did not include Dr. Varney's records because American Family had not yet received them when it sent him Penny's records. Dr. Varney's records indicated Penny had suffered temporary cortical blindness at the time of the accident. Penny never told any other doctor that she experienced blindness at the time of the accident and did not testify at trial that she experienced temporary blindness at that time. Dr. Schutta's report indicated that even if Penny was having partial complex seizures, he did not believe they were due to the accident because there was no evidence that she had sustained any significant concussion in the accident.

On July 8, 1987 a four-member claims committee denied the Morgans' claim for uninsured motorist benefits based primarily upon Dr. Schutta's opinion. On January 19, 1989 the Morgans filed a petition against American Family, seeking damages for breach of contract and bad-faith denial of insurance benefits. The trial court denied American Family's motions for separate trials on the breach of contract and bad faith claims. The issues were tried together in a jury trial.

Before the trial, American Family had Penny examined by Dr. Jones, a clinical neuropsychologist, and Dr. Rizzo, a neurologist. Dr. Jones' six-hour neuropsychological assessment of Penny produced no evidence that she had sustained a permanent brain injury. Dr. Rizzo also did not discover evidence of any brain injury during his neurological examination of Penny.

The jury found the Morgans had suffered total damages of $351,877.95 as a result of the accident. It also found American Family failed to pay the benefits in bad faith and awarded $1,000,000 in punitive damages. The State of Iowa intervened for a statutory portion of the punitive damages. See Iowa Code § 668A.1(2)(b) (1993). The trial court entered judgment for the uninsured motorist policy limits, $100,000, plus attorney fees, litigation expenses and prefiling interest from the date American Family denied the claim. Because the jury found that American Family's conduct was not directed specifically towards the plaintiffs, the court divided the punitive damages by awarding $250,000 to the plaintiff, $350,000 in plaintiffs' attorney fees pursuant to a contingency fee arrangement, and $400,000 to Iowa Civil Reparation Trust Fund. The court awarded interest on the punitive damages from the date of the verdict.

The parties raise several issues in this appeal. American Family argues the court erred in overruling its motions for directed verdict and judgment notwithstanding the verdict on the bad faith claim. It also chal-

lenges the court's failure to grant its motion for directed verdict on the breach of contract claim based on the limitations period set forth in the contract. Other issues raised by American Family relate to the court's instruction on what constitutes bad faith, the award of attorney fees and litigation expenses as compensatory damages on the bad faith claim, and the dates from which interest on the damages was awarded. The Morgans challenge the court's limitation of compensatory damages on the bad faith claim to the policy limits and the jury's determination that American Family's conduct was not directed specifically against them. The intervenor State disputes the method used to calculate the amount of attorney fees that are deducted from the punitive damage award. Amicus curiae, the Iowa Trial Lawyers Association, filed a brief on the issue of the method of calculating attorney fees. Our resolution of the bad faith and contractual limitations issues makes it unnecessary to address all of the issues raised.

## II. *Scope of Review.*

Questions involving the sufficiency of evidence to generate a submissible jury issue in the face of a motion for directed verdict present issues of law. *Wolfe v. Graether,* 389 N.W.2d 643, 651 (Iowa 1986). When reviewing the denial of a motion for a directed verdict or judgment notwithstanding the verdict, we must view the evidence in the light most favorable to the resisting party. *Konicek v. Loomis Bros.,* 457 N.W.2d 614, 617 (Iowa 1990). When the sufficiency of the evidence to support a jury finding is at issue, we look to whether there is substantial evidence to support the finding. *See* Iowa R.App.P. 14(f)(1).

## III. *Bad Faith.*

American Family argues the court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on the bad faith claim. To prove American Family acted in bad faith in denying their claim, the Morgans must show the absence of a reasonable basis for denying their claim under the policy. *Dolan v. Aid Ins. Co.,* 431 N.W.2d 790, 794 (Iowa 1988).

They must also show American Family denied the claim knowing or having reason to know that its denial was without a reasonable basis. *Kiner v. Reliance Ins. Co.,* 463 N.W.2d 9, 13 (Iowa 1990). An insurance company, however, has the right to debate a claim that is "fairly debatable" without being subject to bad faith tort claims. *Clark–Peterson v. Independent Ins. Assocs.,* 514 N.W.2d 912, 914 (Iowa 1994). A claim may be fairly debatable as to either a matter of fact or law. *Dolan,* 431 N.W.2d at 793. Whether a claim is fairly debatable is appropriately decided by the court as a matter of law. *Wetherbee v. Economy Fire & Casualty Co.,* 508 N.W.2d 657, 662 (Iowa 1993).

The absence of a reasonable basis for denying the claim is an objective element. *Reuter v. State Farm Mut. Auto. Ins. Co.,* 469 N.W.2d 250, 253 (Iowa 1991). Where an objectively reasonable basis for denial of a claim actually exists, the insurer cannot be held liable for bad faith as a matter of law. *Id.*

Both parties agree that the evaluations by Drs. Jones and Rizzo provided a reasonable basis to deny the claims by the time of the trial. However, the Morgans brought their bad faith claim based on American Family's denial of their coverage claim on July 8, 1987. The court instructed the jury:

In determining whether Defendant denied the claim in bad faith you are limited to only those facts which Defendant knew or reasonably should have known at the time of its denial of the claim on July 8, 1987.

Neither party objected to the language of this instruction, although American Family objected to the sufficiency of the evidence to submit any instructions on bad faith. Therefore, we will look at the information that American Family had before it at the time it denied the claim to determine whether it had an objectively reasonable basis for denial.

American Family initially questioned whether Penny's problems were due to the accident because she was not knocked unconscious, denied being "dazed" and had no post-concussive amnesia from the accident. It was also concerned that her first "fainting"

spell was three weeks after the accident and that she had not sought extensive medical examination until fifteen months after the accident. It also noted Penny had a normal EEG result after the accident and had been given a CAT scan prior to the accident. The first time American Family received information that the Morgans were making a claim for personal injuries Penny received in the accident was seventeen months after the accident. These concerns prompted American Family to seek additional medical records before making a decision on the claim.

American Family collected Penny's medical records and determined it needed an expert opinion. In May 1987 American Family sent the records it had in its possession to Dr. Schutta. After reviewing the records, including records from Dr. Hines, Dr. Schutta's letter responded:

> The "syncopal attacks" could be partial complex seizures but there is no proof of this and I don't think they are due to the accident. As far as I can see she did not sustain any significant concussion during the accident, she was neither dazed nor unconscious nor did she have amnesia. Therefore I seriously doubt that if she has partial complex seizures the [sic] originated from the head injury.

After it sent Penny's records to Dr. Schutta, but before it denied her claim, American Family received a letter and notes from Dr. Varney. Dr. Varney's statement that Penny experienced temporary cortical blindness from the accident is at the center of this dispute. The Morgans assert that American Family should have questioned Dr. Schutta's opinion because it was rendered without this information. They argue that Dr. Schutta's opinion was based on the belief that there was no evidence of any significant concussion from the accident and that the "evidence" that Penny had experienced cortical blindness contradicted this belief. They therefore argue that relying on Dr. Schutta's opinion without having provided him with this "evidence" constitutes bad faith.

As a neuropsychologist Dr. Varney referred Penny to Dr. Hines, a neurologist, because he did not feel qualified to make a diagnosis of partial complex seizures. Dr.

Hines' records and his conclusion that Penny suffered partial complex seizures as a result of the accident were among those reviewed by Dr. Schutta. Robert Drilling, the district casualty claims manager, testified that in light of the "very, very, very thorough past medical history [that Dr. Hines took from Penny] I don't know what this [Dr. Varney's records] would have added to Dr. Schutta's paper to review." We agree that Dr. Varney's records would not have added to Dr. Hines' thorough evaluation of Penny.

█ Although members of the claims committee testified they were skeptical of claims submitted involving treatment by Drs. Hines and Varney, they testified the primary reason for denying the Morgans' claim was Dr. Schutta's letter. An insurance company is not obligated to disregard the opinion of its own expert in favor of the insured's expert's opinion.

Based on the information that Penny had not sought medical treatment at the time of the accident, denied being unconscious or dazed from the accident, did not make a claim for her injury for seventeen months, together with Dr. Schutta's recommendation that even if Penny suffered from partial complex seizures, they were not caused by the accident, the claim was "fairly debatable." Therefore, American Family had an objectively reasonable basis to deny the claim at the time of the denial as a matter of law. *See, e.g., Dirks v. Farm Bureau Mut. Ins. Co.*, 465 N.W.2d 857, 861 (Iowa 1991) (several factors provided a reasonable basis for denying insured's claim for benefits, therefore denial was not in bad faith); *Dolan*, 431 N.W.2d at 794 (existence of insured's previous back injury raised a fairly debatable issue regarding whether any disability remained at the time of the accident); *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 111 (Iowa 1986) (insurer had right under policy to investigate origin of fire and insureds were responsible for some of the delay); *Higgins v. Blue Cross of W. Iowa*, 319 N.W.2d 232, 236 (Iowa 1982) (conflicting medical reports relating to insurer's defense of misrepresentation made insured's contract claim "fairly debatable").

The Morgans also assert American Family's investigation was inadequate because it failed to provide Dr. Schutta with Dr. Varney's letter and because it failed to have an expert actually examine Penny before denying the claim. They assert this imperfect investigation amounts to bad faith. American Family concedes that its investigation was not perfect, but asserts an imperfect investigation does not amount to bad faith.

Iowa law is clear that an imperfect investigation, standing alone, "is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." *Reuter*, 469 N.W.2d at 254–55. Because American Family had an objectively reasonable basis to deny coverage at the time it refused the claim, it had no duty to investigate further before denying the claim. *See North Iowa State Bank v. Allied Mut. Ins. Co.*, 471 N.W.2d 824, 828 (Iowa 1991) (in a first-party bad-faith claim, "the insurer has no clearly defined duty of investigation [as in a third-party claim] and may require the insured to present adequate proof of loss before paying the claim.") (citation omitted); *see also State Farm Fire & Casualty Co. v. Balmer*, 891 F.2d 874, 877–78 (11th Cir.1990) (under Alabama law once insurer finds arguable reason to deny claim it has no affirmative duty to investigate further) (citations omitted).

We therefore hold the trial court erred in not granting American Family's motion for a directed verdict on the bad faith claim. Because the bad faith claim should not have been submitted to the jury, we need not address the other issues raised on appeal relating to the bad faith claim and the award of punitive damages on the claim.

IV. *Contractual Limitations.*

American Family asserts that the breach of contract claim is barred by a provision in the policy which limits the time period for filing suit against it. In April 1984 American Family issued a new "easy-to-read" automobile insurance policy to its policyholders. That policy contained a provision which stated: "We may not be sued under the Uninsured Motorist coverage on any claim that is barred by the tort statute of limitations."

The statute of limitations for a personal injury tort suit in Iowa is two years. Iowa Code § 614.1(2). Without this provision, the statutory limitations period to file suit under the policy would be the one for written contracts, which is ten years. *Id.* § 614.1(5); *see also Douglass v. American Family Mut. Ins. Co.*, 508 N.W.2d 665, 667–68 (Iowa 1993) (holding an insurance company may validly shorten the limitations period in uninsured motorist policies to less than the statutory limitations period for a written contract). A cover letter accompanied the new policy. The letter purported to set forth the "important changes" in the policy, but did not include the reduced time to bring suit under the uninsured motorist policy as one of the changes.

American Family argues the contractual limitations period in the policy prohibits the Morgans from recovering under the uninsured motorist policy as a matter of law because they did not bring suit until more than two years after the accident. It therefore argues the court erred in submitting the Morgans' theories of why their claim is not barred to the jury.

The Morgans argue that American Family failed to preserve error on the contractual limitations issue because it did not object to submission to the jury of special interrogatories which related to the Morgans' defenses to the limitations provision. American Family's motion for a directed verdict on the contractual limitations issue was sufficient to alert the trial court to its argument that it should prevail on the issue as a matter of law. Therefore, error on the issue was preserved. *See Hartman v. Norman*, 253 Iowa 694, 697, 112 N.W.2d 374, 376 (1961) (defendants' consent to instructions did not waive right to challenge rulings on motions to direct).

The Morgans advanced several theories why the contractual limitations period does not bar their claim. In answering special interrogatories, the jury only reached the first two theories. We now address each of their arguments.

First, the Morgans assert the provision does not apply to them because they never received the new "easy-to-read" policy. In

answer to a special interrogatory on this question, the jury determined that the Morgans had received the new policy.

■ Second, the Morgans argue they did not receive notice of the change in the limitations provision. They claim American Family failed to bring the change to their attention because the cover letter accompanying the new policy did not mention it.

In answer to a special interrogatory, the jury agreed that the Morgans had not received notice of the policy change. American Family argues the jury's response is not supported by sufficient evidence and is contrary to law. It asserts that because the jury determined the Morgans had in fact received the policy, they were on notice of the terms and conditions contained in the policy as a matter of law.

■ An agreement in writing speaks for itself; and, absent fraud or mistake, ignorance of the contents of a written agreement will not serve to negate or avoid its contents. *Small v. Ogden*, 259 Iowa 1126, 1132, 147 N.W.2d 18, 22 (1966). A party is charged with notice of the terms and conditions in a contract he or she entered into if the party is able to read the contract and has the opportunity to read it. *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 323 (Iowa 1977). Therefore, because the Morgans received the policy, they are charged with knowledge of its contents. The jury's determination that the Morgans did not receive notice of the policy change is not supported by sufficient evidence as a matter of law.

■ Third, the Morgans assert they did not consent to the policy change and did not receive consideration for it. Their argument is based on the concept that an existing contract cannot be changed without the consent of the parties or new consideration. The policy covering the Morgans at the time of Penny's accident was effective from March 23, 1985 until August 23, 1985. The new policy was sent to policyholders in April 1984. Therefore, the policy in effect at the time of Penny's accident was a new contract. Because the Morgans had received the new policy, their payment of the premium to re-new the policy constituted consent to the terms of the policy and consideration for the insurance coverage as provided by the policy. *See Mutual Benefit Life Ins. Co. v. Fischer*, 236 Iowa 40, 50, 17 N.W.2d 847, 852 (1945) (Mulroney, J., dissenting) (the premium is the consideration paid for the contract of insurance).

■ Fourth, the Morgans argue the word "claim" in the provision is ambiguous. They contend the word could mean either a claim against the uninsured motorist or a claim against American Family. The construction and interpretation of an insurance policy is a question of law for the court to decide. *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995). The policy is to be construed as a whole, giving the words used their ordinary, not technical meaning to achieve a practical and fair interpretation. *Gracey v. Heritage Mut. Ins. Co.*, 518 N.W.2d 372, 373 (Iowa 1994). When the terms of an insurance policy are ambiguous, we will construe them against the insurer. *Id.* However, the mere fact that the parties disagree on the meaning of a particular term does not establish ambiguity. *Id.* We will not give a strained or unnatural reading to the words of the policy to create ambiguity where there is none. *West Trucking Line, Inc. v. Northland Ins. Co.*, 459 N.W.2d 262, 263 (Iowa 1990).

We believe the only reasonable interpretation of the language is that the word "claim" refers to an action against the uninsured tortfeasor. Therefore, the policy provides the statute of limitations for a personal injury action in the state where the accident occurred shall be the length of time the insured has for bringing suit against American Family for coverage under the uninsured motorist provision of the policy.

■ Fifth, the Morgans assert that even if the word "claim" refers to an action against the uninsured motorist, their claim against Fisher was not barred by the tort statute of limitations. Therefore, they argue their suit against American Family is not barred by the contractual limitations period. Prior to bringing this suit against American Family, the Morgans sued Fisher for Penny's

injuries and obtained a judgment against him. Although the Morgans did not file this suit until after Iowa's two-year statute of limitations for personal injuries had run, Fisher did not defend the suit and therefore did not assert a limitations defense. The Morgans argue that because the statute of limitations is an affirmative defense that must be raised or waived, *see Pride v. Peterson*, 173 N.W.2d 549, 552 (Iowa 1970), their claim against Fisher is not barred by the statutory period because he never raised the defense; and therefore their suit against American Family is not barred by the contractual limitations provision. We disagree. As a matter of law, we interpret the contractual limitation provision as barring suit against American Family on any uninsured motorist claim after the time period of the tort statute of limitations has run.

Finally, the Morgans assert that American Family is equitably estopped from asserting the contractual limitations defense. To establish estoppel, the Morgans must prove by clear and convincing evidence a false representation or concealment of material facts by American Family, lack of knowledge on the part of the Morgans, intention by American Family that the representation or concealment be acted on, and reliance by the Morgans to their prejudice. *See Hicks v. Franklin County Auditor*, 514 N.W.2d 431, 441 (Iowa 1994).

One estoppel argument is that the cover letter sent with the new "easy-to-read" policy contained a false representation or concealment of material facts because it purported to set forth "important changes" in the policy, but neglected to mention that the time the insured has to bring suit against American Family under the uninsured motorist provision was being reduced. The Morgans cannot prevail on this argument, however, because John testified that they never received the policy *or* the cover letter. As a result, the Morgans could not have relied on the letter to their detriment.

The Morgans also assert American Family should be estopped from asserting the contractual limitations defense because when it denied the Morgans' claim for uninsured motorist benefits on July 8, 1987,

it did not alert them that it intended to rely on the limitations provision as a defense after August 19, 1987. The Morgans argue that American Family should have warned them of the approaching limitations deadline. We disagree. An insurer does not have the duty to warn its policyholders that the time period for filing suit against it is running out. We also note the Morgans are in a poor position to complain that they were not warned about the approaching limitation period because they retained an attorney to represent them in this matter six months before the limitation period ran, yet did not bring suit until January 1989.

Because each of the Morgans' theories as to why the limitations provision should not apply to them was either resolved against them by the jury or should not have been submitted to the jury as a matter of law, we resolve this issue in favor of American Family. The Morgans cannot recover on this breach of contract claim because their suit is barred by the contractual limitations provision in the policy.

For the foregoing reasons, we reverse and remand for entry of judgment consistent with this opinion.

**REVERSED AND REMANDED.**