**Kirby THOMPSON, Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Appellee.

No. 95–1680.

Supreme Court of Iowa.

Feb. 19, 1997.

David S. Gorham and R. Ronald Pogge of Hopkins & Huebner, P.C., Des Moines, for appellant.

Mark W. Fransdal of Redfern, Mason, Dieter, Larsen & Moore, Cedar Falls, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN and ANDREASEN, JJ.

LARSON, Justice.

In October 1991 Kirby Thompson fell two stories from the roof of a building and landed on a cement floor, severely breaking both arms. At that time, he was employed by McKiness General Contractors. United States Fidelity and Guaranty Company (USF&G) was the workers' compensation carrier for McKiness. Thompson initially received workers' compensation benefits, but USF&G later terminated them on the ground that Thompson was intoxicated at the time of the incident and that the intoxication was a "substantial factor" in causing his fall. *See* Iowa Code § 85.16(2) (1991). The intoxication defense was unsuccessful, and a deputy industrial commissioner ordered USF&G to reinstate the benefits. (USF&G did not challenge that order.) Thompson then sued USF&G for alleged bad faith in terminating his benefits. The district court directed a verdict for USF&G on the basis that Thompson's claim was fairly debatable, and we affirm.

Thompson complains that it was error for the court to decide the question as one of law because he produced substantial evidence that USF&G had no reasonable basis for denying the claim. USF&G responds that under our cases the issue of whether a claim is fairly debatable is to be determined as a matter of law by the court, citing *Morgan v. American Family Mutual Insurance Co.*, 534 N.W.2d 92, 96 (Iowa 1995) ("Whether a claim is fairly debatable is appropriately decided by the court as a matter of law."), and *Wetherbee v. Economy Fire & Casualty Co.*, 508 N.W.2d 657, 662 (Iowa 1993) (same). We disagree with Thompson's assessment of the strength of his case, but we also disagree with USF&G's view that the "fairly debatable" issue is to be decided by the court as a matter of law in every case.

## I. *The Law in General.*

Federal courts applying Iowa law have considered our cases on bad-faith claims and have pointed to several apparent inconsistencies in them, *see, e.g., Chadima v. National Fidelity Life Ins. Co.,* 55 F.3d 345, 345 (8th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995), in which the federal court of appeals stated:

> This diversity case presents the question of whether a judge or jury should decide whether an insurer had a reasonable basis for denying a claim in a first-party bad-faith action. Cases from the Iowa Supreme Court go both directions.

In *Reedy v. White Consolidated Industries, Inc.,* 890 F.Supp. 1417, 1439 n. 13 (N.D.Iowa 1995), the federal district court stated:

> This court is frustrated by the Iowa Supreme Court's failure in *Morgan* ... to address ... and to resolve for itself precisely what part of the first-party bad-faith cause of action may be determined by the court and under what circumstances. The federal courts must continue to wait for guidance....

While isolated statements in our bad-faith cases appear to be inconsistent regarding the role of the court on a directed-verdict motion, the *holdings* of those cases are not. Some cases call for a ruling as a matter of law, while others require fact-findings. For example, we said in *Morgan* that the fairly debatable question was "appropriately decided by the court as a matter of law" because uncontroverted evidence showed that the claimant had not sought medical attention at the time of her accident, denied being unconscious, and did not make a claim for her injury for seventeen months. Also, there was expert testimony that her problems were not caused by the accident. We held that the claim was "fairly debatable" as a matter of law. *Morgan,* 534 N.W.2d at 97.

In *Wetherbee,* 508 N.W.2d at 662, we also said that the fairly debatable defense "is appropriately decided by the court" because the pivotal issue was purely one of law. The claimant under an uninsured motorist provision was time-barred from making a claim against a third-part tortfeasor. Thus, because the insured had no underinsurance claim as a matter of law, her claim for bad-faith failure to pay underinsurance benefits could not survive—clearly a proper issue for the court to decide as a matter of law.

On the other hand, some of our cases have said that the fairly debatable issue is not for the court to decide. *See, e.g., Nassen v. National States Ins. Co.,* 494 N.W.2d 231 (Iowa 1992); *Kiner v. Reliance Ins. Co.,* 463 N.W.2d 9 (Iowa 1990).

In *Nassen* we held that an insurance company's "confusion" about the claim

> could have been cleared up by a reading of the company's own claim file. National States ignored crucial information in that file and shunned any information that plaintiff's representative sought to provide.... Under the circumstances, the question of bad faith was for the jury to decide.

494 N.W.2d at 236. In *Nassen* there was substantial evidence that the insurer lacked a reasonable basis for denial, based on its conduct in failing to properly investigate the claim—a case that was clearly appropriate for the jury to decide.

■ As shown by these cases, the question of whether the fairly debatable issue was one for the court or the jury depends on the facts of the individual case. We agree with the federal court of appeals in *Chadima,* which stated:

> *Wetherbee* [our case stating that issue may appropriately be decided by the court] can be read as giving the trial court the opportunity to decide as a matter of law *in the appropriate circumstances* whether the insurer had a reasonable basis for denying the claim, *but not mandating the court to do so.*

55 F.3d at 349 (emphasis added).

As Thompson has conceded, there are no unique rules that apply when a district court rules on a directed-verdict motion in a bad-faith case. In such a case, as in all others,

> [t]ime-honored rules govern our review of such motions. The primary standard is that of substantial evidence; where no substantial evidence exists to support each

element of a plaintiff's claim, directed verdict or judgment n.o.v. is proper. Substantial evidence is that which a "reasonable mind would accept as adequate to reach a conclusion." Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury.

*Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866, 873 (Iowa 1989) (citations omitted).

■ In first-party bad-faith claims, the plaintiff must show (1) the absence of a reasonable basis for denying the claim, and (2) that the defendant knew or had reason to know that its denial was without a reasonable basis. *Morgan,* 534 N.W.2d at 96; *Wetherbee,* 508 N.W.2d at 661–62; *Kiner,* 463 N.W.2d at 12–13. Whether evidence is sufficient to generate a jury question is an issue of law for the court. *Morgan,* 534 N.W.2d at 96.

■ Applying these principles in bad-faith cases, a court should direct a verdict for the defendant only when, viewing the record in the light most favorable to the claimant, there is no substantial evidence to support the elements of the claim, *i.e.,* that the insurer lacked a reasonable basis for denial and that it knew or should have known it lacked such a basis. *See id.* at 96; *Wetherbee,* 508 N.W.2d at 661–62.

## II. *Application of the Law.*

■ In order to survive the motion for directed verdict, Thompson must have generated "substantial" evidence that USF&G lacked a reasonable basis for denial. Substantial evidence means evidence that a reasonable mind would accept as adequate to reach a conclusion. *Stover,* 434 N.W.2d at 873. We therefore look to the facts in the record as presented by the plaintiff. Because we conclude he failed to produce substantial evidence on the first element, the lack of a reasonable basis for denial, we need not address the knowledge element.

At the hospital, immediately after his fall, Thompson told medical personnel that he had snorted cocaine the night before. On the morning after the fall, a urine test was taken

from Thompson. The test was analyzed at the Mayo Clinic in Rochester, Minnesota, and showed the presence of cocaine, barbiturates, and opiates. This drug test information was not known to USF&G until after it had started paying benefits.

Kim Brienzo was the insurance representative for USF&G on this claim. In a letter to her dated January 6, 1992, James Johnson of Health Cost Management Inc., an independent medical review company, noted that Thompson had a history of chemical dependency and that the lab tests indicated a presence of cocaine, barbiturates, and opiates. The letter further stated: "One can certainly draw a conclusion that the presence of these substances could have caused the claimant to fall." Johnson then recommended: "In light of the aforementioned, it is our opinion that the claim should be rejected as being not work-related and the claimant should be advised to submit the medical claim to his major medical carrier for their consideration."

Upon further inquiry, Brienzo received more information from the Mayo Clinic concerning the drug test. The letter stated that the barbiturates and opiates could be attributed to medication Thompson received during his medical treatment. The letter stated: "Cocaine is used in some very specialized surgical procedures ...; however, in the absence of such procedure, the positive findings on our screen is highly suggestive of extracurricular cocaine use."

Brienzo sent this letter to James Johnson. Johnson reviewed the material and concluded, "we are still of the opinion that our original conclusion was correct and our recommendation for rejection of the claim is still valid. Based upon the documents aforementioned we would recommend you consult with your legal counsel for their opinion."

Brienzo obtained the legal counsel of Iris Post, who is an experienced workers' compensation lawyer with whom Brienzo had worked on numerous occasions. On August 13, 1992, Brienzo sent Post information regarding Thompson's drug use. Post advised Brienzo that, to determine if USF&G had an intoxication defense, USF&G would need to thoroughly investigate the claim, interview

witnesses, and obtain other medical records, which it did.

Brienzo sent a letter of denial to Thompson on September 28, 1992, and a month later Thompson filed his arbitration petition with the Iowa Industrial Commissioner. The intoxication defense, obviously, was the key to USF&G's defense. Regarding this defense, Iowa Code section 85.16 provides:

No compensation under this chapter shall be allowed for an injury caused:

. . . .

2. By the employee's intoxication, which did not arise out of and in the course of employment but which was due to the effects of alcohol or another narcotic, depressant, stimulant, hallucinogenic, or hypnotic drug not prescribed by an authorized medical practitioner, if the intoxication was a substantial factor in causing the injury.

Thompson argues that his admission that he snorted cocaine twenty-five hours before the accident does not provide a reasonable basis for denial of his claim. He contends that USF&G had no reason, despite this admission, to believe that Thompson was actually intoxicated at the time of the accident. He also argues that the drug test showing Thompson had cocaine in his system did not directly prove that he was intoxicated at the time of the accident.

The question, however, is not whether Thompson was actually intoxicated at the time of his fall. The question is whether the claim was fairly debatable based on the potential intoxication defense, as a matter of law. We hold it was. The district court properly directed a verdict for USF&G because the plaintiff failed to produce substantial evidence of a lack of a reasonable basis for denial.

**AFFIRMED.**