Kevin **FIELDS**, Plaintiff,

v.

**NCR CORPORATION**, Defendant.

No. 4:09–cv–460.

United States District Court,
S.D. Iowa,
Central Division.

Feb. 10, 2010.

Mark D. Sherinian, Sherinian & Walker PC, West Des Moines, IA, for Plaintiff.

Paul R. Harris, William D. Edwards, Ulmer & Berne LLP, Cleveland, OH, Jon K. Swanson, Gaudineer Comito & George LLP, West Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is NCR Corporation's ("Defendant") Motion to Compel Arbitration, filed on November 19, 2009. Clerk's No. 7. Plaintiff, Kevin Fields ("Plaintiff"), filed a resistance on December 8, 2009. Clerk's No. 8. Defendant filed a reply on December 15, 2009. Clerk's No. 9. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2009, Plaintiff filed a Petition (hereinafter "Complaint") in the Iowa District Court in and for Warren County, Iowa, asserting claims against Defendant for age and disability discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Iowa Code Chapter 216 (the "ICRA"). *See* Clerk's No. 1. NCR timely removed the matter to the United States District Court for the Southern District of Iowa, pursuant to 28 U.S.C. §§ 1331 and 1441(b). *See* Clerk's No. 1.

Plaintiff was employed by Defendant from September 3, 1983 to October 9, 2009. Compl. ¶ 3.[1] During his tenure with Defendant, Plaintiff worked as a Professional

---

1. Plaintiff's state court Petition, filed before removal, contains very few factual allegations. Accordingly, the Court draws most of the facts for purposes of this background recitation from Plaintiff's Resistance to Defendant's Motion to Compel Arbitration (Clerk's No. 8).

Services Technical Consultant, providing multiple support services to Defendant's clients from his home in Norwalk, Iowa. Pl.'s Resistance ¶ 2. In 1999, Plaintiff began experiencing walking and stability problems. *Id.* ¶ 3. Plaintiff nonetheless made a trip to London on behalf of Defendant in April 2000. *Id.* ¶¶ 4, 6. Upon return from London, Plaintiff sought out medical advice for his walking and stability problems, and notified his manager of the problems. *Id.* ¶¶ 4–5. In January 2005, Plaintiff was diagnosed with Parkinson's disease. *Id.* ¶ 7. According to Plaintiff, Defendant "accommodated his disability by not requiring him to travel" after the 2000 London trip. *Id.* ¶ 8. In March 2009, however, Defendant notified Plaintiff that he would be terminated because he could not perform an essential function of his job—traveling. *Id.* ¶ 9. In lieu of termination, Plaintiff was given the option of applying for short term disability ("STD") benefits, which he promptly did. *Id.* ¶ 10. Shortly after applying for STD benefits, Plaintiff filed a charge of discrimination against Defendant with the Iowa Civil Rights Commission ("ICRC"). *Id.* ¶ 11. On September 2, 2009, Defendant informed Plaintiff that his employment was going to be terminated because of his inability to travel.[2] *Id.* ¶ 12. On September 3, 2009, Defendant informed Plaintiff's counsel that any discrimination claim by Plaintiff was subject to arbitration pursuant to Defendant's Internal Dispute Resolution ("IDR") policy, enacted in 2002. *Id.* ¶ 13.

Defendant contends that in August 1996, it introduced a three-step conflict resolution process called "Addressing Concerns Together" ("ACT"). *See* Def.'s Ex. A (Affidavit of Edward Gallagher) ¶ 3. The third stage of the ACT policy provides for "Final and Binding Arbitration." *Id.* The ACT policy was available for viewing by all employees, including Plaintiff, on Defendant's intranet. *Id.* In November 2002, Defendant replaced the ACT policy with the IDR policy—a two-step conflict resolution process. *Id.* ¶ 4. Like the ACT policy, the IDR policy ultimately provides that employment-related disputes not resolved in the first stage of the IDR process be submitted in the second stage "to a neutral outside arbitrator for a final and binding decision." Def.'s Ex. 3 at 2. The IDR policy was communicated to existing NCR employees through a company-wide e-mail sent to "All Users (NCR)" and was additionally posted on NCR's intranet. Def.'s Ex. A ¶¶ 4, 13; Def.'s Ex. 2 (e-mail).

Defendant argues that the Court must compel arbitration in this matter, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and that due to the arbitration provision, the Court lacks jurisdiction over Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1).[3]

**2.** Defendant contends in its Brief that Plaintiff was terminated "by reason of a reduction in force." Def.'s Br. at 1; *see also* Def.'s Ex. A (Affidavit of Edward Gallagher) ¶ 17 ("NCR terminated Plaintiff's employment by reason of a reduction in force effective October 7, 2009.").

**3.** Case law diverges significantly on the question of whether a motion to compel arbitration should be made under Rule 12(b)(1), 12(b)(3), 12(b)(6), or simply under the FAA. *See, e.g., Precision Press, Inc. v. MLP U.S.A., Inc.,* 620 F.Supp.2d 981, 984 n. 1 (N.D.Iowa 2009) ("MLP's motion raises the enigmatic question of whether motions to dismiss based on an arbitration clause should properly be brought as motions under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6)."); *Pet Quarters, Inc. v. Badian,* No. 4:04–cv–697, 2006 WL 1307669, at *2 n. 1 (E.D.Ark. May 9, 2006) ("It is an open question in the Eighth Circuit whether a motion to dismiss on the basis of a forum selection or arbitration clause should be brought under Rule 12(b)(3) or Rule 12(b)(6)."). The Eighth Circuit, however, has permitted at least one motion to compel to be treated as a Rule 12(b)(1) motion. *See U.S. for Use of Lighting and Power Servs., Inc. v. Interface Construction Corp.,* 553 F.3d 1150, 1153 (8th Cir.2009) ("Interface

*See* Def.'s Mot. at 1. Plaintiff counters that the Court should not enforce the IDR policy in this case because the arbitration provision is unconscionable. Pl.'s Resistance ¶ 20. Accordingly, Plaintiff contends the Court should hold a jury trial in accordance with the FAA to determine whether there is an enforceable arbitration agreement governing this matter. *Id.* ¶ 21.

## II. LAW & ANALYSIS

Under the FAA, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("The Arbitration Act thus establishes a 'federal policy favoring arbitration,' requiring that we 'rigorously enforce agreements to arbitrate.'") (quoting *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). The language of § 2 "reflects congressional intent 'to overcome judicial hostility to arbitration agreements'" while at the same time providing "'States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision,' if the contract violates state law." *Cicle v. Chase Bank USA,* 583 F.3d 549, 553 (8th Cir. 2009) (quoting *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)).

 Under Eighth Circuit jurisprudence, when a party moves to compel arbitration under the FAA, the district court's role is limited to determining: (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the claims asserted fall within the arbitration agreement. *Faber v. Menard, Inc.,* 367 F.3d 1048, 1052 (8th Cir.2004); *see also Larry's United Super, Inc. v. Werries,* 253 F.3d 1083, 1085 (8th Cir.2001) (noting that the review should address "only such issues as are essential to defining the nature of the forum in which a dispute will be decided"). Once a court determines that there is a valid arbitration agreement and that the specific dispute at issue falls within the substantive scope of that agreement, the court must compel arbitration, and its duties are at an end. *See Larry's United,* 253 F.3d at 1086; *Lyster v. Ryan's Family Steak Houses,* 239 F.3d 943, 945 (8th Cir. 2001).

### A. Is there a Valid Arbitration Agreement?

 "[A]rbitration is simply a matter of contract law." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "Under the FAA, ordinary contract principles govern whether parties have agreed to arbitrate." *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 834 (8th Cir.1997). The FAA does not specify rules for contract interpretation; therefore, state law controls. *See Lyster,* 239 F.3d at 946.

 In the present case, Plaintiff argues that Defendant's IDR policy is unenforceable because it is unconscionable. *See* Pl.'s Resistance at ¶ 20. "Unconscionability ... is a recognized defense to the enforcement of the contract." *Fed. Land*

---

presented its motion to compel arbitration as a Rule 12(b)(1) motion to dismiss on a limited record. Thus, our cupboard of facts is relatively bare."). Accordingly, the Court notes that in the context of a Rule 12(b)(1) motion, it may consider matters beyond the pleadings. *See Deuser v. Vecera,* 139 F.3d 1190, 1191 n. 3

(8th Cir.1998) ("'The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'") (quoting *Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 470 (8th Cir.1993)).

*Bank of Omaha v. Steinlage,* 409 N.W.2d 173, 174 (Iowa 1987). "Under Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable." *Faber,* 367 F.3d at 1053 (citing *In re Estate of Ascherl,* 445 N.W.2d 391, 392 (Iowa Ct.App.1989)). The determination of "[w]hether a contractual term is unconscionable is a question of law." *Brunsman v. DeKalb Swine Breeders, Inc.,* 138 F.3d 358, 360 (8th Cir.1998) (citing Iowa Code § 554.2302(1) and comment 3).

■ The Iowa Supreme Court has identified five factors to be considered in assessing whether a contract or a contract provision is unconscionable: 1) assent; 2) unfair surprise; 3) notice; 4) disparity of bargaining power; and 5) substantive unfairness. *Home Fed. Sav. & Loan Ass'n of Algona v. Campney,* 357 N.W.2d 613, 618 (Iowa 1984); *see also Faber,* 367 F.3d at 1053. The Court will evaluate each factor in turn.

### 1. *Assent.*

■ Plaintiff first contends that he did not "assent" to the IDR policy's arbitration provision. In support of this contention, Plaintiff states that "had he known about the policy he would not have agreed to it" and that "once he learned of the policy he objected, through his attorney, to its applicability." Pl.'s Resistance at 3. The Court agrees that Plaintiff's failure to read the IDR policy's arbitration provision prohibits a finding that he *actually* assented to the provision. A lack of actual assent does not, however, give rise to an automatic conclusion that a contract provision is unconscionable. *See Campney,* 357 N.W.2d at 618 ("With regard to assent, defendants point out that because they did not read the mortgage before signing it, they cannot be said to have actually assented to paragraph 17. This is true, but does not end our inquiry."). Indeed, were such the rule, contract provisions would routinely be struck down as unconscionable merely because one party failed to read it and, thus, failed to actually assent to it. Thus, actual assent, or the lack thereof, is but one facet of the assent calculus which, in turn, is but one facet of the overall unconscionability analysis.[4]

Plaintiff argues that the facts regarding assent in this case are "virtually identical" to those in *Stepp v. NCR Corp.,* 494 F.Supp.2d 826 (S.D.Ohio 2007). In *Stepp,* the plaintiff was a long-time employee of NCR, having been hired in 1968. *Stepp,* 494 F.Supp.2d at 829. In 1996, NCR adopted the ACT policy (the predecessor to the IDR policy at issue in the present case), which contained a binding arbitration provision. *Id.* NCR provided notice of the new ACT policy by mailing notices to all of its United States employees and posting the policy on the company's intranet. *Id.* at 829, 833. As in the present case, NCR did not request express written acknowledgment or consent to the arbitration provision, relying instead on language in the ACT policy that provided "your agreement to all of the ACT policy provisions, including arbitration, will be ex-

---

4. While no Iowa case law explicitly mentions a "totality of the circumstances" test, the way in which the five factors of unconscionability are applied in Iowa case law supports the use of such a test. *See, e.g., Campney,* 357 N.W.2d at 618; *C & J Fertilizer,* 227 N.W.2d at 181. A totality of the circumstances test is also consistent with generally accepted principles of an unconscionability analysis. *See, e.g., Cicle,* 583 F.3d at 554 (applying Missouri law and stating that factors of procedural and substantive unfairness should be reviewed in light of the totality of the circumstances in determining whether a contract provision is unconscionable); *Langemeier v. Nat'l Oats Co. Inc.,* 775 F.2d 975, 976–77 (8th Cir.1985) (same under Nebraska law); *Geldermann & Co., Inc. v. Lane Processing, Inc.,* 527 F.2d 571, 575 (8th Cir.1975) (same under Arkansas law).

pressed ... [b]y continuing employment with NCR [or][b]y accepting any transfers, promotions, merit increases, bonuses or any other benefits of employment." *Id.* at 832. When the plaintiff's employment was terminated in 2001, he sued NCR for age discrimination. *Id.* NCR sought to compel arbitration pursuant to the ACT policy. *Id.* The plaintiff argued that he could not be compelled to arbitrate his claims because he never "received or read the ACT materials sent to him in the mail." *Id.* at 832. The district court agreed, finding that "a genuine issue of material fact exists as to whether Stepp ever received or read the ACT materials. If in fact Stepp neither received nor read these materials, then no offer to arbitrate was made to him, and no contract exists regarding arbitration between Stepp and NCR." *Id.*

*Stepp* is easily distinguishable from the present the case because the *Stepp* ruling addressed a wholly different issue than unconscionability—that of contract formation. That is, the plaintiff in *Stepp* specifically asserted that no contract existed because he never *received* the mailed notice regarding the ACT policy. *Id.* Thus, even assuming that NCR had made a valid offer by mailing the ACT policy to the plaintiff, the plaintiff's testimony that he never received that mailing raised a genuine issue of material fact regarding whether the plaintiff ever accepted NCR's offer.[5] *Id.* In contrast to the plaintiff in *Stepp*, Plaintiff has not asserted that he did not *receive* notice of the IDR policy. Indeed, nowhere in his resistance or supporting materials does Plaintiff contest the issue of contract *formation*;[6] rather Plaintiff focuses exclu-

5. The *Stepp* court did not find NCR's assertion that the plaintiff demonstrated his acceptance by continuing his employment persuasive:

 The potential defect in NCR's argument is that there is every reason to think that Stepp would have performed in identical fashion even had he not been made aware of ACT. Re-characterized in terms of offer and acceptance, the question is whether Stepp's act of continuing to work for NCR, after NCR stated that doing so would constitute acceptance of the new term of employment, demonstrates his assent to, or acceptance of, same. The answer is "no."

 *Stepp*, 494 F.Supp.2d at 832–33. Despite the *Stepp* court's ruling in this regard, however, many courts find continued employment to be sufficient to demonstrate acceptance. *See, e.g., McNamara v. Yellow Transp., Inc.,* 570 F.3d 950, 956 (8th Cir.2009) ("Applying the laws of other states, we have held that continued employment after an employer imposes a term or condition upon employment demonstrates the acceptance and consideration necessary to form an enforceable contract."); *May v. Higbee,* 372 F.3d 757, 764–65 (5th Cir.2004) ("Continuing one's employment after receiving notice that continued employment will constitute assent is a recognized manner of forming a contract."); Further, Iowa law provides that "An '[a]cceptance of

 an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.'" *Heartland Express, Inc. v. Terry,* 631 N.W.2d 260, 270 (Iowa 2001) (quoting Restatement (Second) of Contracts § 50 (1981)). In this case, acceptance of the offer of the IDR policy was invited in the form of continued employment and acceptance of bonuses, raises, etc.

6. The Court has scoured the pleadings and can find no assertion by Plaintiff that the IDR policy was not a valid contract at the outset. Rather, Plaintiff *only* argues that "the Defendants' arbitration policy is unenforceable." Pl.'s Resistance at 1. The Court is mindful that Iowa law requires an offer, acceptance, and consideration to form a contract, *see Taggart v. Drake Univ.,* 549 N.W.2d 796, 800 (Iowa 1996), and that Plaintiff's arguments about a lack of knowledge of the policy could, in the proper factual setting, arguably support a conclusion that there was no acceptance of NCR's offer of the IDR policy, and hence no contract. *See, e.g., Stepp,* 494 F.Supp.2d at 826. The Court is equally mindful, however, of the long-standing tenet of Iowa law that a "party to a written contract may not escape the obligations thereof by merely showing that he failed to read the same, and therefore failed to discover some of its provisions." *Merriam v. Leeper,* 192 Iowa 587, 185 N.W.

sively on the issue of contract enforceability.[7]

To the extent that Plaintiff claims the IDR policy is unconscionable for lack of assent due to the fact that Plaintiff never actually saw or read the policy, then, his argument provides less than compelling evidence of unconscionability, since a "party cannot avoid the terms of [a] contract simply because a harsh result may occur from the failure to read the contract." *Advance Elevator Co., Inc. v. Four State Supply Co.*, 572 N.W.2d 186, 188 (Iowa Ct.App.1997). "Generally, an agreement in writing speaks for itself and absent fraud or mistake, ignorance of the contents will not serve to negate or avoid its contents." *Id.* (citing *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 99 (Iowa 1995), *rev'd on other grounds by* 612 N.W.2d 775 (Iowa 2000)). "Further, a party is charged with notice of the terms and conditions of a contract if the party is able or has had the opportunity to read the agreement." *Id.* (citing *Morgan*, 534 N.W.2d at 99). "A party is also bound by a document the party signs even though the party has not expressly accepted all of the contract provisions and is not aware of them." *Id.* (citing *Joseph L. Wilmotte &*

*Co. v. Rosenman Bros.*, 258 N.W.2d 317, 323 (Iowa 1977)).

### 2. *Unfair Surprise.*

Plaintiff next argues that the "issue of unfair surprise should be applied in two respects." Pl.'s Resistance at 4. First, Plaintiff argues that the fact that Defendant did not require a written acknowledgment of the IDR from older employees (according to Plaintiff, NCR requires new employees to sign a written acknowledgment of the policy) "is fraught with the potential that employees will be held to a policy that they never saw or agreed to." *Id.* Second, Plaintiff contends that unfair surprise is evidenced by the fact that Defendant did not notify Plaintiff of the applicability of the arbitration policy until "a few days after Fields had received his right to sue letters from the EEOC and the ICRC, precluding him from keeping his claim within those agencies." *Id.*

The Court does not find either of Plaintiff's arguments particularly persuasive. As discussed in the context of assent, Plaintiff was e-mailed information about the IDR policy and does not contend that he never received it. Thus, Plaintiff is

---

134, 136 (1921). Hence, since Plaintiff never states that he did not receive the e-mail and the correspondent IDR policy, and since Plaintiff never asserts a lack of offer, acceptance, or consideration, the Court finds no genuine issue of material fact regarding whether the IDR policy is a valid contract (as distinguished from the issue of whether a valid contract is nonetheless unenforceable due to unconscionability). *See Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 n. 3 (Iowa 1995) (refusing to address an issue not raised by the parties).

7. The Court finds the present case more similar to *Raasch v. NCR Corp.*, a case that is, notably, referenced in *Stepp* for precisely the same distinction. *See Stepp*, 494 F.Supp.2d at 833 (citing *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 867 (S.D.Ohio 2003)). The

underlying facts of *Raasch* are similar to those of both *Stepp* and the present case. Raasch began his employment with NCR in 1975. *Raasch*, 254 F.Supp.2d at 850. He was terminated in 2002 and sued NCR for age discrimination. *Id.* NCR sought to compel arbitration pursuant to its ACT policy, which employees were notified of via mail in 1996. *Id.* Unlike *Stepp*, but like Plaintiff, *Raasch* never claimed that he did not *receive* notice of the ACT policy. *Id.* at 852. Indeed, Raasch admitted that, "in 1996, [he] received notice that NCR had initiated an employment-dispute policy, under which certain workplace disputes were subject to mandatory arbitration." *Id.* Accordingly, the district court found that *Raasch*'s continued employment constituted acceptance of the ACT policy and its arbitration provision, as provided in the ACT policy. *Id.* at 867.

charged with notice of the contents of the IDR policy. Moreover, Defendant has provided an affidavit stating that the IDR policy was posted on the company's intranet page and that it "is NCR's regular practice to post policies, notices, and other information related to employees on NCR's internal intranet." Def.'s Ex. A. ¶¶ 13–14. The IDR policy clearly states on the first page, in a font and size used consistently throughout the document, that the second step of the IDR process "involves going to an outside neutral party (in the U.S. a final and binding arbitration . . .) to reach final resolution." Def.'s Ex. 3. On subsequent pages, the arbitration policy is referenced repeatedly. *Id.* Indeed, one entire section is captioned, in a large, bold, and underlined typeface, "Rules of Arbitration." *Id.* Moreover, the e-mail sent to notify employees of the change specifically articulated that the second step of the new IDR policy "will be binding arbitration before a neutral arbitrator, consistent with local laws." *Id.* Given that Plaintiff does not claim a lack of receipt of the IDR policy, Plaintiff's surprise at the terms therein can hardly be characterized as "unfair." *See Campney*, 357 N.W.2d at 618 (finding that where the plaintiff did not read the disputed contract provision, the question becomes whether the term sought to be enforced is "unreasonable or indecent"); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements [are unenforceable].").

### 3. *Notice.*

Plaintiff does not make any specific argument regarding the notice factor. The Court will not give further consideration to this factor, therefore, except to note that Defendant e-mailed the IDR policy to all employees and placed it on the company intranet page, where it has remained since 2002.

### 4. *Disparity of bargaining power.*

Plaintiff avers that "[t]here is no question that there was a disparity of bargaining position" in this case given that NCR is a "nationwide company with thousands of employees while Fields was a relatively minor player who was expendable." Pl.'s Resistance at 4. As Plaintiff concedes, however, a disparity of bargaining power is insufficient, standing alone, to overcome the federal policy favoring arbitration. *See Campney*, 357 N.W.2d at 619. Rather, "[s]tandardized contracts . . . drafted by powerful commercial units and put before individuals on the 'accept this or get nothing' basis" should be "carefully scrutinized by the courts for the purpose of avoiding enforcement of 'unconscionable' clauses." *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 180 (Iowa 1975) (citations omitted). Accordingly, the Court will "carefully scrutinize" the substantive terms of the arbitration provision to determine if it unconscionable.

### 5. *Substantive unfairness.*

Plaintiff finally argues that the IDR arbitration policy is substantively unfair because "it places the most unreasonable limitations on discovery." Pl.'s Resistance at 4. Specifically, Plaintiff asserts that the arbitration policy only permits the plaintiff to take the depositions of two witnesses, it does not allow any written discovery, and it only requires the parties to exchange witness lists two weeks before trial. *Id.* at 4–5. According to Plaintiff, these limitations will: 1) prevent him from obtaining adequate discovery on issues such as similarly-situated employees; 2) prevent him from obtaining information about how NCR selected personnel for lay-offs; and give NCR a significant advantage because

of its own ready access to information relevant to determination of the legal claims in this case. *Id.*

First, to the extent that the arbitration provision of the IDR policy provides for discovery limitations on Plaintiff, it is worthy of noting that Defendant is subject to the same limitations.[8] More significantly, however, Plaintiff's arguments about substantive unfairness do not accurately represent the actual terms of the IDR policy, which provide:

> To prepare for the arbitration hearing, both NCR and the employee have the right to take the sworn deposition statements of two individuals and, in addition, any expert witnesses expected to testify at the hearing. All documents used as exhibits and a list of all potential witnesses will be exchanged at least two weeks in advance of the hearing. No other "discovery" (e.g., depositions or demands for documentation/information) will be permitted *unless the arbitrator finds a compelling need to allow it.* In determining whether a compelling need exists, the arbitrator will balance the interests of fairness and expediency; the arbitrator will only override the goal of achieving a prompt and inexpensive resolution to the dispute if a fair hearing is impossible without additional discovery.

Def.'s Ex. 3 ¶ 19 (emphasis added). Thus, while the arbitration agreement does provide certain limitations on discovery, it also permits the neutral arbitrator to permit additional discovery when necessary to ensure fairness.

The Court further notes that the arbitration procedures outlined in the IDR policy are fair and not unduly burdensome on an employee seeking redress for allegedly wrongful conduct. For instance, any arbitration hearing is to be "conducted in accordance with the [American Arbitration Association's] ('AAA') rules." Def.'s Ex. 3 at ¶ 15. The hearing will be "conducted at a neutral location, in or near the city where the appealing associate works or has worked for NCR." *Id.* ¶ 16. To choose an arbitrator, the AAA will provide a list of seven experienced arbitrators. *Id.* ¶ 17. Each party may strike three of the seven from the list. *Id.* The parties then rank the remaining names in order of preference, and the AAA will "choose the arbitrator from the mutually approved names on both lists, honoring the preference rankings of both parties." *Id.* Moreover, the arbitrator will make his legal determinations using the "substantive law of the state where the claim arose, or federal law where applicable." *Id.* ¶ 18. The arbitrator "will have the same, full authority to order a remedy that a court or jury would, including compensatory damages, attorney fees, punitive damages and reinstatement." *Id.* Both the Plaintiff and the Defendant are permitted legal counsel during the arbitration hearing. *Id.* An appealing employee is only required to submit a fee to the AAA "in an amount equal to the lesser of the filing fee charged in the state or federal court in their jurisdiction. The AAA will bill NCR for the balance of the filing and arbitrator's fees." *Id.* Additionally, "if the employee convinces the arbitrator to overturn the challenged decision in its entirety, the company will be responsible for paying the arbitration filing fees and the arbitrator's fees." *Id.*

Given these considerations, the Court finds that NCR's policy will not leave Plaintiff without legal recourse for his discrimination claims, since under the IDR policy, those claims are merely heard in an arbitral forum rather than a judicial one.

---

8. Naturally, the Court recognizes that Defendant has an advantage in discovering information due to its ready access to its own corporate records and employees. This advantage, however, would exist to a large extent in a judicial forum as well.

Combined with the discretionary authority afforded a neutral arbitrator to permit additional discovery as needed to ensure fairness in the arbitral hearing, the Court does not believe that the arbitration process outlined in the IDR policy is substantively unfair. *See Haro v. NCR Corp.*, No. 3:04–cv–328 (S.D. Ohio July 26, 2005) (attached to Def.'s Mot. as Exhibit B) (concluding that the same arbitration provision was not inequitable because it authorized the arbitrator to permit additional discovery to ensure fairness). Indeed, even with "careful scrutiny," the arbitration provision is seemingly neutral and unbiased and does not impose any substantial inequities or hardships on an employee that might seek arbitration thereunder.

■■■ A contract provision is unconscionable "if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982). Having considered all of the factors of unconscionability on the record before it, the Court finds that the procedural considerations of the analysis (assent, unfair surprise, notice, disparity of bargaining power) provide little evidence of unconscionability. More significantly, the substantive provisions of the arbitration clause are fair and not unconscionable. Considered in totality, the Court concludes that Plaintiff has failed to sustain his burden to proffer sufficient evidence to raise a genuine issue of material fact as to whether the IDR policy is unconscionable. Accordingly, if Plaintiff's claims are arbitrable, the arbitration provision will be enforced under the FAA.

B. *Are Plaintiff's Claims Arbitrable?*

■■■ In determining whether claims come within the scope of an arbitration provision, "the district court does not reach the potential merits of any claim but construes the clause liberally, resolving any doubts in favor of arbitration and granting the motion unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir.2008) (internal quotation and citation omitted). Plaintiff does not contend that his employment discrimination claims are not arbitrable, as required by the second prong of the *Faber* arbitration analysis. Indeed, federal case law establishes that the types of claims Plaintiff asserts in the present action are arbitrable. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 299, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("Neither does the Court contest that claims arising under federal employment discrimination laws, such as Baker's claim that Waffle House discharged him in violation of the [ADA] may be subject to compulsory arbitration." (internal citations omitted)); *Gilmer*, 500 U.S. at 23, 111 S.Ct. 1647 (holding that ADEA claims are arbitrable); *see also Faber*, 367 F.3d at 1052 ("ADEA claims are arbitrable and the FAA extends to most arbitration agreements covering employment disputes." (internal citation omitted)); *Kiernan v. Piper Jaffray Cos., Inc.*, 137 F.3d 588, 594 (8th Cir.1998) (ADA claims); *Faust v. Command Ctr., Inc.*, 484 F.Supp.2d 953, 953–54 (S.D.Iowa 2007) (finding Title VII and ICRA claims arbitrable). Moreover, it is clear that the arbitration agreement in the IDR policy was designed to encompass Plaintiff's claims. *See* Def.'s Ex. 3 (Defendant's IDR policy, which provides: "This Policy defines the process for resolving any employment-related disputes that may arise between NCR and its employees.... The [IDR] process can be used to address most workplace concerns, including, but not limited to, concerns involving ... treatment that is perceived as unequal or discrimina-

tory."). The Court, therefore, concludes that Plaintiff's claims are arbitrable.

### III. CONCLUSION

■■■ Having considered all of the factors in the unconscionability analysis, the Court concludes that the arbitration provision is not unconscionable and that Plaintiff's claims are arbitrable. Accordingly, Defendant's Motion to Compel Arbitration (Clerk's No. 7) is GRANTED. The above-captioned case is hereby STAYED pending completion of arbitration.[9] Once arbitration is concluded, the parties shall promptly file a status report with the Court articulating whether any further proceedings are necessary or whether the present action should be dismissed.

IT IS SO ORDERED.

---

9. Some case law indicates that the Court may have the discretion to dismiss the matter, rather than to stay it. *See, e.g., Herd v. Ernest–Spencer, Inc.,* No. 8:09cv387, 2010 WL 76371, at *3 (D.Neb. Jan. 5, 2010) ("While it is recognized that there is some split in authority regarding whether an action should be stayed, or dismissed without prejudice, when the claims are subject to arbitration, the 'weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.'") (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992)). The FAA, however, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any

issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay the trial* of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Given the FAA's use of the mandatory term "shall," the Court finds it appropriate to issue a stay, rather than to dismiss Plaintiff's claims.