# IN THE SUPREME COURT OF IOWA

No. 12–1295

Filed January 10, 2014

**ESAD OSMIC,**

Appellee,

vs.

**NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

An insurer seeks further review of a court of appeals decision affirming the denial of the insurer's motion for summary judgment based upon the statute of limitations in an insurance policy. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Sharon Soorholtz Greer and Thomas L. Hillers of Cartwright, Druker & Ryden, Marshalltown, for appellant.

James F. Kalkhoff of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellee.

**MANSFIELD, Justice**.

We must decide whether a policy provision limiting the time to file an action to recover underinsured motorist's benefits is binding on a passenger who was injured while riding in the named insured's vehicle. The passenger brought this action approximately one month after the deadline set forth in the policy, which required suit to be commenced "within two years after the date of the accident."

We conclude the passenger, as an insured and a third-party beneficiary of the policy, does not have greater rights than the policyholder. Thus, the passenger cannot avoid the contractual time limitation unless the policyholder under similar circumstances would have been able to avoid it. Because the record, when viewed in the light most favorable to the passenger, does not demonstrate either that the policy's time limit was unreasonable or that the insurer should be equitably estopped from enforcing it, we hold the insurer's motion for summary judgment should have been granted. Accordingly, we vacate the decision of the court of appeals, reverse the order of the district court, and remand for entry of summary judgment in favor of the insurer.

## I. Facts and Procedural Background.

On May 23, 2009, Esad Osmic, his wife, and his children were riding as passengers in a Ford Explorer owned and operated by Esad's brother Selim. Some members of Selim's immediate family were also riding in the vehicle. As the Explorer was traveling northbound on Washington Street/Highway 218 in Waterloo, a Nissan Sentra that was owned and driven by Rochelle Heasley entered the highway. According to witnesses, Heasley's Nissan cut across two lanes without clearance to do so. This forced Selim to take immediate evasive action. He swerved to

avoid being hit, but as a result, he lost control of the Explorer. It ended up rolling over in the grass embankment next to the highway. Selim was ejected from the vehicle.

The police responded to the accident. Heasley was cited for improper merging. At the time, Heasley was insured by Progressive Insurance, with coverage limits of $50,000 per claim and $100,000 per occurrence. Selim had coverage with Nationwide Agribusiness Insurance Company (Nationwide), including underinsured motorist (UIM) coverage.

In October 2009, Esad began treatment for right shoulder pain which he attributed to the May 2009 accident. Arthroscopy was recommended in November 2009, and Esad eventually underwent this procedure in November 2010.

Meanwhile, in June 2010, approximately thirteen months after the accident, Esad's counsel submitted a representation letter to Nationwide. Nationwide's claims representatives thereafter contacted the office of Esad's counsel and left phone messages approximately once a month for the next eight months asking for Esad's medical records. In addition, a letter was sent on December 3, 2010, to Esad's counsel requesting those records.

On September 13, 2010, a Progressive claims representative advised Nationwide's claim representative that Progressive had settled with Selim and his family for $65,000, leaving only $35,000 in remaining coverage for the accident.

On March 7, 2011, Esad's attorney submitted a demand on Heasley's Progressive policy on behalf of Esad and his two children. He asserted that Esad had suffered a right shoulder injury, a left inguinal hernia, and a low back injury as a result of the accident. He also maintained that the children had suffered both physical and

psychological injuries from the accident. The demand letter sought $178,500 for Esad and $13,000 each for the two children. The letter added, "The statute is rapidly approaching in this matter. I hope to hear from you soon to see if these matters can be resolved." At that time, approximately ten weeks remained before the May 23, 2011 expiration of the two-year statute of limitations to bring suit against Heasley. *See* Iowa Code § 614.1(2) (2011) (requiring actions based on personal injury to be brought within two years).

Upon receipt of this letter, Progressive informed Esad's attorney that only $35,000 remained on its policy to cover claims arising from the May 23, 2009 accident. Progressive offered to pay $25,000 to Esad and $5000 for each of his children to settle the claims.

In response to the offer from Progressive, Esad's counsel finally initiated contact with Nationwide by phone on March 25, 2011. During the conversation, Nationwide requested a copy of the demand letter to Progressive and copies of Esad's and his children's medical records.

On March 28, 2011, Esad's counsel provided Nationwide's claims representative with a copy of his demand letter to Progressive, along with copies of his clients' medical records and medical bills. The letter also summarized the status of Progressive's remaining insurance coverage and its outstanding settlement offer of $25,000 for Esad and $5000 each for the two children. The letter further stated:

> Please provide me with a copy of your declaration page so I know and can confirm for my client what the underinsured limits are. Also, please advise in writing if I may proceed with settling with Progressive for the amount identified above.
>
> I realize I have not provided you with the three year prior medical records. I should have those in the very near future and will forward them to you immediately. If you need anything further, please advise. I look forward to

hearing from you to conclude the claim with the tortfeasor as our statute is running.

On April 1, 2011, Esad's attorney sent Nationwide a letter enclosing medical records for Esad for the three years prior to the accident. The letter reiterated:

> Please advise as to your policy limits as soon as possible and also provide me with a copy of the declaration page. Also, please let me know if I may proceed to settle the case with Progressive for the tortfeasor's limits as previously explained. I look forward to hearing from you in the very near future.

On April 12, 2011, Nationwide's claims representative wrote back to Esad's attorney. She granted consent to settle the claims with Progressive for $25,000, $5000, and $5000, respectively. She added, "Regarding your request for a copy of the Declaration page, I do not have consent from our Insured to provide this information." Finally, she stated:

> I am currently reviewing the information provided regarding Esad's injury. I have had the opportunity to review the claim information pertaining to the claims of [the children] and it appears the settlement offers presented by Progressive of $5,000 for each of these claims will adequately indemnify them . . . .

> I am aware of the fast approaching statute expiration date and will be in contact with you regarding the underinsured claim of Esad once I have had the opportunity to review the information you have provided.

On May 4 and May 11, Esad's attorney sent additional medical records and an additional medical bill to Nationwide.

On May 27, 2011, Nationwide's claims representative wrote Esad's attorney, advising that the UIM coverage under Selim's policy "has now expired per the contract language which states Underinsured Motorists coverage will be barred unless suit filing is commenced within two years after the date of the accident." The letter enclosed a copy of the policy's

UIM endorsement. The policy language limiting the time to bring suit read, "[A]ny suit against us under this [UIM] Coverage will be barred unless commenced within two years after the date of the accident."

Esad brought this action against Nationwide and Westfield National Insurance Company (his own insurance carrier) on June 23, 2011, alleging he had suffered damages in excess of the Progressive policy limits and seeking recovery on both Nationwide's and Westfield's UIM coverage. Nationwide then moved for summary judgment, claiming Esad's petition was untimely because he had failed to file it within the policy's two-year deadline. Esad resisted the motion. Nationwide supported its motion with an affidavit from its claims representative, but Esad did not submit an affidavit or other statement from his attorney. Esad did, however, furnish an affidavit from Selim. Therein, Selim stated he would have granted consent to share the declarations page for the Nationwide policy with Esad if asked.

The district court denied Nationwide's motion, citing several considerations. First, the court emphasized that Esad was not a party to Nationwide's insurance policy. As the court put it, "The court knows of no reason that Esad should be bound by contractual provisions in which he did not participate." The court further found that even though Nationwide had not waived its statute of limitations defense, it "intentionally did not provide plaintiff with a copy of the policy which would have revealed the contractual limitations within the two-year time period." The court noted Nationwide's agreement that it would have provided a copy of the relevant policy language if requested. Lastly, the district court observed that Nationwide could have completed its claims investigation and responded to Esad's UIM claim before the contractual

limitations period expired. For this combination of reasons, the court denied Nationwide's summary judgment motion.

We granted Nationwide's application for an interlocutory appeal and transferred the case to the court of appeals. In a well-written and lively opinion, the court of appeals upheld the district court's ruling. Initially, it determined "the contractual two-year period of limitation in Selim's Nationwide insurance policy was valid and enforceable as to Selim." However, the court also found Nationwide had a duty under the facts of the case to advise Esad's attorney of the contractual deadline for bringing UIM claims under the policy. As the court explained:

> Esad was not a party to the Nationwide policy and had no knowledge of the contractual time limitation for filing suit. Nationwide had knowledge of Esad's claim within the contractual time limitation, but chose to withhold the information until after the limitations period expired.

One member of the panel dissented from this ruling, reasoning that third-party beneficiaries are bound by contractual provisions, that Esad's attorney never asked for the policy itself, and that the requested declarations page "would not have provided any information regarding the contractual limitations period."

We granted Nationwide's application for further review.

## II. Standard of Review.

We review the district court's summary judgment ruling for errors at law. Iowa R. App. P. 6.907; *Farm Bureau Life Ins. Co. v. Holmes Murphy & Assocs., Inc.,* 831 N.W.2d 129, 133 (Iowa 2013). "We can resolve a matter on summary judgment if the record reveals a conflict concerning only the legal consequences of undisputed facts." *Boelman v. Grinnell Mut. Reins. Co.,* 826 N.W.2d 494, 501 (Iowa 2013). When the facts related to the limitations issue are undisputed, "the enforceability of

the contractual limitations period is a question of law for the court." *Robinson v. Allied Prop. & Cas. Ins. Co.*, 816 N.W.2d 398, 401 (Iowa 2012).

### III. Legal Analysis.

**A. The Terms of the Policy.** We begin our analysis with a review of the policy. *See, e.g., Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681–82 (Iowa 2008). Our first step in insurance coverage matters is to consider "what the policy itself says." *Id.* at 683 (internal quotation marks omitted). "Interpretation requires us to give meaning to contractual words in the policy." *Boelman*, 826 N.W.2d at 501.

Under Iowa Code section 516A.1, UIM coverage must be included in every motor vehicle liability insurance policy unless the insured rejects it. *See* Iowa Code § 516A.1; *Robinson*, 816 N.W.2d at 402. Selim's policy contained a UIM endorsement. That endorsement provided:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury" caused by an accident.

The endorsement defined "insured" to include "[a]ny other person 'occupying' 'your covered auto.'" Hence, Esad was an insured for purposes of the UIM coverage. Additionally, as noted above, the endorsement provided that "any suit against us under this [UIM] Coverage will be barred unless commenced within two years after the date of the accident."

The policy also had a separate declarations page that identified the Ford Explorer as an insured vehicle, indicated the vehicle had UIM coverage with limits of $100,000 per person and $300,000 per accident, and disclosed the premium charged to Selim for that coverage.

**B. The Reasonableness of the Contractual Two-Year Limit on Filing Suit**. Because UIM claims are contractual, they are presumptively subject to a ten-year statute of limitations. *See* Iowa Code § 614.1(5); *Robinson*, 816 N.W.2d at 402; *Douglass v. Am. Family Mut. Ins. Co.*, 508 N.W.2d 665, 666 (Iowa 1993), *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000). However, we have held that parties to an insurance contract can modify the deadline for bringing suit. *See Robinson*, 816 N.W.2d at 402 (" 'Under general contract law, it is clear that the parties may agree to a modification of statutory time limitations . . . . Iowa has long recognized the rights of insurers to limit time for claims, irrespective of a legislative imprimatur on such provisions.' " (quoting *Douglass*, 508 N.W.2d at 666–67)); *Faeth v. State Farm Mut. Auto. Ins. Co.*, 707 N.W.2d 328, 334 (Iowa 2005); *Nicodemus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 787 (Iowa 2000). Our caselaw indicates a contractual limitation of the statutory deadline is enforceable if it is reasonable. *See Robinson*, 816 N.W.2d at 402; *Nicodemus*, 612 N.W.2d at 787 ("The basic rule was established in *Douglass*: a contractual limitations provision is enforceable if it is reasonable.").

In certain prior cases, we have upheld contractual limitations provisions that require suit to be brought for UIM or uninsured motorist (UM) benefits within two years of the accident. *See Robinson*, 816 N.W.2d at 409; *Douglass*, 508 N.W.2d at 668. There is no question that the two-year contractual limit was reasonable in this case. Esad was represented by counsel who made contact with Nationwide nearly a year before the two-year limitations period ran out. Esad could have sued for UIM benefits during that period. There was no barrier in the insurance policy to his doing so. *See Robinson*, 816 N.W.2d at 403; *cf. Faeth*, 707

N.W.2d at 335 (finding a two-year limitations period unreasonable where the provision left the insured no time to file suit after the claim accrued); *Nicodemus*, 612 N.W.2d at 788–89 (holding a two-year limitations period was unreasonable because there was no contractual basis for bringing the suit until after the limitations period had expired). This is not even a case where the insured failed to appreciate "the extent of her injuries." *See Robinson*, 816 N.W.2d at 403. At least six months prior to the expiration of the two-year contractual limitations period, Esad knew the extent of his injuries, and at least two months before the end of that period, Esad's attorney knew Progressive's coverage for those injuries would be inadequate.[1]

**C. Esad's Rights Under Selim's Policy**. Esad argues, however, that he is not the policyholder and therefore cannot be bound to all the terms of Selim's contract with Nationwide. We cannot accept this proposition.

"A policy of automobile liability insurance is a contract, therefore generally governed by those accepted rules applicable to contracts." *Gen. Cas. Co. of Wis. v. Hines*, 261 Iowa 738, 745, 156 N.W.2d 118, 122 (1968); *see Talen v. Emp'rs Mut. Cas. Co.*, 703 N.W.2d 395, 407 (Iowa 2005) ("Insurance policies are contracts between the insurer and the insured and must be interpreted like other contracts . . . .").

---

[1]Esad concedes in his brief that he knew the extent of his injuries on November 11, 2010, when arthroscopic surgery on him revealed a torn shoulder labrum. He argues the limitations period should not have commenced until that date, based on the discovery rule. This is incorrect. We have previously stated an "insurance company has the ability, if it so chooses, to clearly articulate the applicable limitations period for claims against the tortfeasor and the insurer, and the event upon which the limitations period begins to run." *Hamm*, 612 N.W.2d at 784. Nationwide's policy stated that any suit for recovery of UIM benefits would be barred "unless commenced within two years after the date of the accident."

A contract may benefit and give rights to third parties. *See RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 320 (Iowa 2006) (" 'A third party . . . has an enforceable right by reason of a contract made by two others . . . if the promised performance will be of pecuniary benefit to [the third party] and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.' " (*quoting Vogan v. Hayes Appraisal Assocs., Inc.*, 588 N.W.2d 420, 423–24 (Iowa 1999))). We have adopted the Restatement (Second) of Contracts section 302 concerning third-party beneficiaries. *See RPC Liquidation*, 717 N.W.2d at 319; *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988). Illustration 4 to that section indicates a beneficiary of a life insurance policy would be considered a third-party beneficiary of the life insurance contract. *See* Restatement (Second) of Contracts § 302 cmt. *c*, illus. 4, at 441 (1981).

When an insurance contract extends coverage to someone like Esad who is not the policyholder, this additional insured becomes a third-party beneficiary of the contract. As the Wisconsin Court of Appeals has put it:

> Jones also made an uninsured motorist claim against State Farm. Once Jones opted to make that claim, we hold that he was properly bound to the provisions of the policy relating to that claim. Functionally, the insurance policy made Jones a third-party beneficiary of the contract. When a right has been created by a contract, the third party claiming the benefit of the contract takes the right subject to all the terms and conditions of the contract creating the right.

*Jones v. Poole*, 579 N.W.2d 739, 741 (Wis. Ct. App. 1998); *see also Travelers Ins. Co. v. Warren*, 678 So. 2d 324, 326 n.2 (Fla. 1996) (characterizing lawful occupants of an insured vehicle as "third party beneficiaries to the named insureds' policy"); 2 William J. Schermer &

Irvin E. Schermer, *Automobile Liability Insurance* § 26:19 (4th ed. 2013) ("The fact that a Class II or additional insured (such as a pedestrian or passenger) is not a signatory to the contract does not exempt such an insured from the application of policy conditions and requirements to which a named insured is subject. A Class II insured is deemed a third-party beneficiary of the policy and bound by all its provisions when a claim for uninsured motorist coverage is made against the policy.").

However, the rights of a third-party beneficiary are controlled by the terms of the contract. *See Olney v. Hutt*, 251 Iowa 1379, 1383, 105 N.W.2d 515, 518 (1960) ("The [third-party beneficiary's] rights can rise no higher than those of the promisee."); Restatement (Second) of Contracts § 309 cmt. *b*, at 459 ("Where there is a contract, the right of a beneficiary is subject to any limitations imposed by the terms of the contract.").

Thus, Esad is subject to the provisions of Selim's insurance policy, including the one requiring "any suit" under the UIM coverage—i.e., regardless of claimant—to be brought within two years of the accident. *See Williams v. Progressive Ne. Ins. Co.*, 839 N.Y.S.2d 381, 382 (App. Div. 2007) (holding that a passenger seeking UM benefits is a third-party beneficiary of the insurance policy and subject to any provisions of the policy that apply to all insureds).

> An injured person who makes a claim for uninsured motorist benefits under a policy to which he is not a signatory is in the category of a third party beneficiary. Historically, this Court has held that third party beneficiaries are bound by the same limitations in the contract as the signatories of that contract. The third party beneficiary cannot recover except under the terms and conditions of the contract from which he makes a claim.

*Johnson v. Pa. Nat'l Ins. Cos.*, 594 A.2d 296, 299 (Pa. 1991); *see also Ex parte Dyess*, 709 So. 2d 447, 450–51 (Ala. 1997) (noting that an insured

who did not sign the policy and is seeking UM benefits "is a third-party beneficiary of the policy" and cannot "pick and choose the portions of the contract that he wants to apply"); *Jeanes v. Arrow Ins. Co.*, 494 P.2d 1334, 1337 (Ariz. Ct. App. 1972) (finding that a passenger seeking UM benefits "has become a third party beneficiary" and must "abide by the terms of the contract" in order to obtain benefits under a UM policy); *Bantz v. Bongard*, 864 P.2d 618, 623 (Idaho 1993) ("[A] third party beneficiary of an insurance policy must comply with all the terms and provisions of an insurance policy which apply to that beneficiary."). *Allgor v. Travelers Ins. Co.*, 654 A.2d 1375, 1379 (N.J. Super. Ct. App. Div. 1995) ("As an intended third-party beneficiary of the contract, plaintiff in this case simply does not have greater rights than his father has as the named insured and maker of the contract.").[2]

**D. Is There an Affirmative Duty to Advise an Insured of the Policy's Limitations Period?**  The next question is whether Nationwide had an affirmative duty to disclose the contractual deadline for filing suit to Esad's attorney.  The court of appeals found that it did.  For the reasons discussed herein, we respectfully disagree.

We have previously said, "An insurer does not have the duty to warn its policyholders that the time period for filing suit against it is running out." *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 100 (Iowa 1995), *overruled on other grounds by Hamm*, 612 N.W.2d at 784.  In

---

[2]Of course, obligations that an insurer owes to an insured under Iowa law would apply here.  Our point is simply that Esad is bound by the policy terms to the same extent as Selim, the policyholder.

It should be noted, however, that Iowa Code section 507B.4(19) (2011)—now Iowa Code section 507B.4(3)(*s*) (2013)—which indicates it is an unfair insurance practice for an insurer to fail to provide "upon a reasonable request, information to which that individual is entitled," applies only to a "policyholder or applicant."  Esad is neither of these.

*Morgan*, the plaintiffs alleged their insurer, American Family Mutual Insurance Company (American Family) acted in bad faith when it refused to pay benefits under the Morgans' uninsured motorist policy for injuries suffered by their daughter during an automobile accident. *Id.* at 94. The Morgans did not learn the full-extent of their daughter's injuries until more than a year after the accident. *Id.* at 95. Sixteen months after the accident, and approximately eight months before the expiration of a two-year contractual limitations period that was added to their policy by American Family the year before the accident, the Morgans informed American Family of their intention to seek damages under the uninsured motorist policy. *Id.* at 95, 98. After reviewing the claim, American Family denied it about six weeks before the contractual limitations period expired. *Id.* at 95. The Morgans filed suit eighteen months later, sixteen months after the deadline for filing suit had passed. *Id.* Among other things, the Morgans argued American Family failed to warn them of the approaching deadline and, therefore, should be barred from asserting the limitations period defense. *Id.* at 100. We explained:

> The Morgans also assert American Family should be estopped from asserting the contractual limitations defense because when it denied the Morgans' claim for uninsured motorist benefits on July 8, 1987, it did not alert them that it intended to rely on the limitations provision as a defense after August 19, 1987. The Morgans argue that American Family should have warned them of the approaching limitations deadline. We disagree. An insurer does not have the duty to warn its policyholders that the time period for filing suit against it is running out. We also note the Morgans are in a poor position to complain that they were not warned about the approaching limitation period because they retained an attorney to represent them in this matter six months before the limitation period ran, yet did not bring suit until January 1989.

*Id.* at 100.

We believe *Morgan* controls here.[3]  Just as there is no general duty to affirmatively disclose the limitations deadline to policyholders, no duty arises to affirmatively disclose it to additional insureds.  Any other conclusion would undermine the principle, just discussed, that a third-party beneficiary's rights under a contract do not exceed those of the primary party.  Notably, Esad, like the Morgans, had retained counsel well before the limitations period ran.

The *Morgan* approach appears to be in accord with prevailing caselaw.  A number of authorities indicate that an insurer has no affirmative obligation to disclose a contractual limitations period, such as by providing a copy of the insurance policy, absent a specific request.

> The plaintiff here argues that although defendant did not refuse to deliver the policy, the failure to deliver was in essence a tacit refusal to deliver.  He maintains since he did not have the policy and was not aware of the provision requiring suit against the company be brought within one year of the loss, the company should be estopped from asserting that provision.
>
> We disagree.  The plaintiff here, unlike in [*Union Fire Inc. Co. v.*] *Stone*, [152 S.E. 146 (Ga. Ct. App. 1930)] never requested a copy of the policy, and the defendant never refused to give the policy.  Defendant's failure to deliver the policy did not amount to a "tacit refusal" to deliver.

*Schoonover v. Am. Family Ins. Co.*, 572 N.E.2d 1258, 1265 (Ill. App. Ct. 1991) (citing cases).  In *Schoonover*, the court held summary judgment should be granted based upon a policy's contractual statute of limitations when the insured's attorney never asked for a copy of the policy, even though a copy had not been provided to the insured.  *Id.* at 1266 (citing prior cases).

---

[3]Notably, our court decided *Morgan* after *Weber v. State Farm Mut. Auto. Ins. Co.*, 873 F. Supp. 201, 209 (S.D. Iowa 1994) (finding an insurance company had a duty to disclose coverage to injured passengers considered insureds under the policy).

> Where the insurer wrongfully and unjustifiably withholds the policy from the insured, the insurer may be estopped from relying on the suit limitation clause. . . .
>
> On the other hand, an insurer's failure to provide a copy of a policy did not create a waiver or estoppel regarding the policy's limitation provision under the following circumstances:
>
> . . . .
>
> There was no request for a copy of the policy.

17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 238:22, at 238-40 to -41 (2005) [hereinafter *Couch on Insurance 3d*].

Esad cites us to decisions from Indiana and Ohio, but we find them unpersuasive here. In *Stewart v. Walker*, the Indiana Court of Appeals declined to enforce a contractual limitations period for bringing a UM lawsuit as to a passenger in the insured vehicle. 597 N.E.2d 368, 374–76 (Ind. Ct. App. 1992). In that case, the third-party beneficiary, Stewart, had written the insurer to advise it of the claim three months before the expiration of the limitations period, had asked the insurer to advise if it needed "any further information . . . to process this uninsured motorist claim," and had received no response until after the limitations period. *Id.* at 374. The court found an affirmative duty to disclose the limitations period, flowing from the insurer's overall duty of good faith:

> We cannot but conclude that a duty of good faith dealing certainly must include an obligation to inform such a claimant of conditions precedent in the insurance contract, the more so when the nonparty claimant has asked whether the insurer requires any additional information in order to process the claim.

*Id.* at 375–76.

However, subsequent authority from the Indiana Supreme Court has clarified that Indiana does not recognize a general duty of disclosure, based on principles of good faith, running from insurers to third-party

beneficiaries. *See Cain v. Griffin*, 849 N.E.2d 507, 511–12 (Ind. 2006). In the Indiana Supreme Court's view, *Stewart* was driven by " '*the facts and circumstances of [that] case.*' " *See id.* at 512 (quoting *Stewart*, 597 N.E.2d at 376). As the Indiana Supreme Court explained in *Cain*, *Stewart* was correctly decided because the insurance company had attempted to rely upon a third-party insured's failure to comply with a condition that the same insurance company had "refused" to disclose. *See id.*

The facts of Esad's situation differ significantly from those in *Stewart*. Here, Esad was represented by counsel who contacted Nationwide nearly a year before the expiration of the contractual limitations period. Esad's counsel then failed to respond to a series of inquiries from Nationwide over many months. When Esad's counsel resumed contact with Nationwide, he never asked about policy conditions or asked for a copy of the policy itself. In any event, the lesson of *Cain* is that Indiana does not recognize a broad-based duty on the part of insurers to affirmatively disclose contractual limitations periods to third-party beneficiaries.

Esad also relies on an Ohio case that found a three-year contractual limitations period unenforceable as to a nonpolicyholder. *See Wilson v. Ohio Cas. Ins. Co.*, 923 N.E.2d 1187, 1190 (Ohio Ct. App. 2009). In *Wilson*, the plaintiff was injured while driving a vehicle owned and insured by his employer and later brought a UM/UIM claim. *See id.* at 1188–89, 1191. The court noted that under Ohio law, insurance companies have a duty of good faith to inform insureds of limitations periods when faced with potential claims. *Id.* at 1190. "[W]here the insurer has been made aware that an insured has a potential claim under a policy providing UM/UIM coverage, the insurer must inform the

insured of any applicable limitations period contained in the policy." *Id.* at 1191. The court found no reason to distinguish insureds who are not policyholders—i.e., third-party beneficiaries, such as Wilson—from other insureds. *Id.* at 1190–91. As the court put it, "[T]o restrict the notice requirement to the policyholder itself would be to ignore the contractual duty that the insurer owes to insureds other than the policyholder." *Id.* at 1190.

But Ohio's approach is incompatible with our insurance law precedent. As we have previously noted, Iowa law does not place a general duty upon insurers to notify policyholders of contractual limitations periods. *See Morgan*, 534 N.W.2d at 100. *Wilson* thus cannot be squared with *Morgan*.

**E. Equitable Estoppel**. We now turn to the question whether Nationwide, under the facts and circumstances of this case, is estoped from asserting the statute of limitations.[4]

Our caselaw recognizes a defendant can be estopped from "asserting the statute [of limitations] as a defense when it would be inequitable to permit the defendant to do so." *Christy v. Miulli*, 692 N.W.2d 694, 701 (Iowa 2005). To successfully establish equitable estoppel, the plaintiff has the burden to show by clear and convincing evidence:

> "(1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act

---

[4]The district court found that Nationwide had not engaged in conduct amounting to a waiver of the contractual limitations period, and Esad does not challenge that determination on appeal. *See Talen*, 703 N.W.2d at 409 ("[W]e can discern nothing in [the insurer's] communication that suggests a waiver of policy defenses."); *see also Hook v. Lippolt*, 755 N.W.2d 514, 527 (Iowa 2008) ("[W]aiver is the intentional relinquishment of a known right." (Internal quotation marks omitted.)).

upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice."

*Hook,* 755 N.W.2d at 524–25 (quoting *Christy,* 692 N.W.2d at 702); *see Morgan,* 534 N.W.2d at 100 ("To establish estoppel, the Morgans must prove by clear and convincing evidence a false representation or concealment of material facts by American Family, lack of knowledge on the part of the Morgans, intention by American Family that the representation or concealment be acted on, and reliance by the Morgans to their prejudice.").

We note that Esad was represented by an attorney during the relevant time period; all of Nationwide's interactions were with Esad's counsel. Yet the summary judgment record contains neither an affidavit nor a professional statement from Esad's counsel.

We find that summary judgment record insufficient to raise a genuine issue of material fact as to equitable estoppel. The record does not show misrepresentation or concealment, nor does it show plaintiff's reliance on a misrepresentation or concealment. Nationwide did not refuse to provide a copy of the policy (which contains the UIM endorsement); rather, Esad's counsel never asked for one.

"[F]ailure to provide a copy of a policy [does] not create [an] estoppel regarding the policy's limitation provision . . . [when] [t]here was no request for a copy of the policy." 17 *Couch on Insurance 3d* § 238:22, at 238–41; *see First Fed. Sav. & Loan of New Castle Cnty. v. Nationwide Mut. Fire Ins. Co.,* 460 A.2d 543, 546–47 (Del. 1983) (holding that an insurer's "silence" after receipt of a settlement demand approximately two months before the contractual limitations period ran did not amount to an estoppel and did not foreclose summary judgment in favor of the insurer); *Schoonover,* 572 N.E.2d at 1266 (affirming summary judgment

despite plaintiff's claim of estoppel where the plaintiff was represented by counsel and the defendant insurer was not asked to provide, and did not refuse to provide, a copy of the insurance policy).[5]

Even if the record contained evidence of misrepresentation or concealment, Esad would be hard-pressed to establish any kind of reliance without an affidavit or professional statement from his counsel. Esad was continuously represented by counsel from June 2010 onward, approximately eleven months before the expiration of the contractual limitations period. There is no evidence in this record regarding what (if any) consideration or investigation Esad's counsel gave to the statute of limitations, what time period Esad's counsel thought he had to bring suit, whether Esad's counsel was aware the policy had a "two years after the date of accident" statute of limitations, whether he was aware that we upheld such a clause in the UM context twenty years ago,[6] and whether he contacted Selim or Selim's counsel to obtain a copy of the policy (or if not, why not). *See Morgan*, 534 N.W.2d at 100 ("We also note the Morgans are in a poor position to complain that they were not warned about the approaching limitation period because they retained an attorney to represent them in this matter six months before the

---

[5]Nationwide was asked to provide the declarations page. This would have shown the dollar amounts of the policyholder's particular coverages but not general terms and conditions, such as contractual deadlines for filing suit. Nationwide declined to provide the declarations page without Selim's permission. Nationwide contends it would have provided a copy of the standard policy provisions, including the contractual limitations period, if asked. Regardless, for summary judgment purposes, the key point is that Nationwide was not asked. Had Esad's counsel asked for a copy of the policy and Nationwide refused to provide it, this would be a different case.

[6]*See Douglass*, 508 N.W.2d at 667 (noting that "[a]n uninsured motorist provision that allows two years to sue . . . grants as many rights as the plaintiff would have in the case of an insured tortfeasor").

limitation period ran . . . ."); *see also Greeson v. Acceptance Ins. Co.*, 738 So. 2d 1201, 1205 (La. Ct. App. 1999) (affirming dismissal of a case based on the contractual limitations period where "[t]he evidence produced by plaintiff does not establish that he withheld suit in reliance on any words or actions of the defendant or its adjuster" and "[t]he plaintiff [did] not explain why he did not seek information about the policy provisions in a more timely manner"). In short, Esad cannot prove reliance either.

The court of appeals observed that Esad's counsel said the following in his March 28, 2011 letter:

> I realize I have not provided you with the three year prior medical records. I should have those in the very near future and will forward them to you immediately. If you need anything further, please advise. I look forward to hearing from you to conclude the claim with the tortfeasor as our statute is running.

In the court of appeals' view, the request to the insurer to advise "[i]f you need anything further" could have triggered a duty to disclose the contractual limitations period.

We respectfully disagree. This request came in the context of a promise to provide requested medical records. There was subsequent correspondence between the parties. In its April 12 letter, after granting formal consent to the proposed settlement with Progressive, Nationwide's claim representative turned to the UIM issues. In the final paragraph of her letter, she wrote, "I am aware of the fast approaching statute expiration date and will be in contact with you regarding the underinsured claim of Esad once I have had the opportunity to review the information you have provided." While we agree with the court of appeals that this reference to the "fast approaching statute expiration

date" did not actually "inform Esad of the contractual time period," at a minimum it should have heightened counsel's sensitivity to the possibility of a contractual limitations period corresponding to the statutory limitations period for tort claims arising out of the accident. Notably, we have no statement from Esad's counsel describing his reaction at the time to this sentence of Nationwide's letter, although Esad had the burden of proof on estoppel.

In affirming the district court's denial of summary judgment, the court of appeals reasoned, "Nationwide had knowledge of Esad's claim within the contractual time limitation, but chose to withhold the information until after the limitations period expired." We agree the summary judgment record supports this inference. The question, however, is whether it is enough to overcome the contractual limitations period. We think not. Regardless of Nationwide's underlying motive, in the absence of a duty to disclose the limitations period or conduct amounting to an estoppel, it may enforce the limitations clause in its insurance contract. *See Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 204–05 (Iowa 1994) (affirming summary judgment for the insurer based on the contractual limitations period and stating it found "nothing in the record indicating that Preston Mutual made any representations to lull Stahl into delaying the filing of his action until after the limitations period had expired"); *cf. Wendt v. White Pigeon Mut. Ins. Ass'n*, 418 N.W.2d 374, 376 (Iowa Ct. App. 1987) (finding an insurer's false representation that it would pay the homeowner's claim after a favorable disposition of the arson charge against his estranged wife amounted to an estoppel to assert a contractual limitations period).

**IV. Conclusion.**

For the foregoing reasons, we vacate the court of appeals decision, reverse the judgment of the district court, and remand with directions to enter summary judgment in favor of Nationwide.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Wiggins, J., who concurs specially. Hecht and Appel, JJ., join this special concurrence.

#12–1295, *Osmic v. Nationwide Agribus. Ins. Co.*

**WIGGINS, Justice (special concurrence).**

I concur in the result, but write separately regarding the majority's third-party beneficiary analysis. When interpreting an insurance policy, courts must look to the language of the policy to determine the rights of the parties, not how other courts have treated similar issues. *See Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 299 (Iowa 1994) (stating the court must look to the meaning of the words used in the contract). The analysis in this case should have been from the standpoint of an insured, not of a third-party beneficiary, because under the terms of the policy, Esad Osmic was an insured. The Underinsured Motorists Coverage Insuring Agreement of the policy provided, "Insured as used in this endorsement means . . . any other person occupying your covered auto."

The reason we should analyze this case from the standpoint of an insured is that I am not satisfied a third-party beneficiary has the same rights as an insured under our law. An insurance company has a duty to exercise reasonable care to disclose underinsured motorist coverage to an *insured*. *See Weber v. State Farm Mut. Auto. Ins. Co.*, 873 F. Supp. 201, 209 (S.D. Iowa 1994) (applying Iowa law to find the insurance company had a duty to disclose coverage to passengers insured under a policy). One treatise describes this duty as follows:

> Once an insurer has received notice of an occurrence, there is no reason to restrict the obligation to disclose relevant information about the insured's rights and duties. If the insurer's employees or claims representatives process the claim without additional input from the claimants, full responsibility rests on those individuals. If additional actions by claimants or beneficiaries are required, the insurer should be obligated to provide them complete information about the coverages that may provide benefits,

what needs to be done, when it needs to be done, and all ancillary rights. Anything less falls short of the insurer's contractual obligations.

2 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 19.13, at 203 (rev. 3d ed. 2005). The Supreme Court of Pennsylvania described the duty between an insurance company and its insured as follows:

> The duty of an insurance company to deal with the *insured* fairly and in good faith includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, *including any time limitations for making a claim.*

*Dercoli v. Pa. Nat'l Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989) (emphasis added).

Applying these principles, I would find that Nationwide met its obligations to Osmic as an insured. First, Osmic's attorney requested a copy of the declaration page and not the policy itself. Nationwide had a duty to provide the declaration page to Osmic in response to his request. *See* Iowa Code § 507B.4(19) (2011) (making it an unfair insurance practice for an insurer to fail or refuse "to furnish any policyholder or applicant, upon reasonable request, information to which that individual is entitled"). By informing Osmic's attorney they were not entitled to the declaration page, Nationwide committed an unfair claim settlement practice by "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." *Id.* § 507B.4(10)(*b*). Even with these practices, a genuine issue of fact is not engendered to allow this case to proceed to trial because the declaration page would not include the applicable statute of limitations language.

Moreover, the insurance company gave Osmic's attorney notice that the statute of limitations under the policy was fast approaching in its April 12 letter. There, Nationwide stated, "I am aware of the fast approaching statute expiration date and will be in contact with you regarding the underinsured claim of Esad once I have had the opportunity to review the information you have provided." At this point in time, Osmic had over a month, a sufficient amount of time, to request the policy or ask Nationwide what it meant by "the fast approaching statute expiration date" and file suit if a settlement could not be reached. Thus, I would come to the same conclusion as the majority because Nationwide gave its insured notice of the impending statute of limitations and Osmic failed to do anything further in response to the notice.

At the very least, the lesson to learn from this case is that an insured who may be entitled to benefits under underinsured motorist coverage should request the insurance company to provide a copy of the policy or clarify his or her rights under the coverage as soon as practicable.

Hecht and Appel, JJ., join this special concurrence.