# IN THE COURT OF APPEALS OF IOWA

No. 13-1559
Filed July 16, 2014

**ROBERT O. DAVIS,**
      Plaintiff-Appellant,

**vs.**

**CLIFFORD GARTH DAVIS, CONNIE SUE
WORKMAN, and JAMES CRAIG DAVIS,**
      Defendants-Appellees.
_____

Appeal from the Iowa District Court for Wayne County, Terry Rickers, Judge.

Plaintiff appeals the district court decision granting summary judgment to defendants on his claim that inter vivos transfers of real estate by decedent should be set aside due to undue influence. **REVERSED AND REMANDED.**

Michael J. Burdette of Burdette Law Firm, P.C., Clive, for appellant.

Verle W. Norris and James G. Rowe, Corydon, for appellee.

Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Robert Davis appeals the district court decision granting summary judgment to defendants on his claim inter vivos transfers of real estate by his mother to his siblings was the result of undue influence. He claims summary judgment was inappropriate because there are genuine issues of material fact concerning whether his mother was the subject of undue influence and whether there was a confidential relationship between his mother and one or more of the defendants. We reverse the decision of the district court granting summary judgment to defendants and remand for further proceedings.

**I.      Background Facts & Proceedings.**

Clifford Davis and June LaMere Davis (LaMere) had six children—Clifford Davis (Garth), Duane Davis, Connie Workman, James Davis, Robert Davis, and Gary Davis. Gary died in 1978. LaMere had a stroke in 1994 and thereafter required assistance with physical activities. Clifford died in 1999, and his interest in the family's farmland went to LaMere. Duane died in 2004.

During his father's lifetime, Robert assisted his father with his farming operation. Robert leased farmland from his parents and then from his mother. In an affidavit, Robert stated he believed animosity between his siblings began when, on the advice of Robert and Duane, Clifford's estate sought to recover money owed by Garth and James to Clifford. Robert also stated that his farming operation was subject to vandalism, which was caused or instigated by Garth and James.

On July 28, 2009, LaMere sent letters to her four surviving children, Garth, Connie, James, and Robert, stating,

I am contemplating gifting the land I own in certain designated parcels to my above named children on or about Thursday, August 6, 2009 at 10:00 a.m. The determination of who receives the various portions of land will be done by drawing at Shelton Law Firm, 1920 Court Avenue, Chariton, IA 50049. The meeting will commence at 10:00 a.m. and I intend to have the drawing and determination made that day regarding whom will receive what parcel of ground. The deeds may be signed that day or on a later date and each deed will reserve unto myself a life estate with certain restrictions regarding the conduct of the leasing and possibly other matters during my lifetime.

. . . .

This letter states my present intentions and it is not and should not be considered by anyone to be binding upon what I actually do from this day forward.

The drawing was held as scheduled on August 6, 2009, at the law office of William Shelton, LaMere's attorney. Each of the four siblings drew an envelope out of a wastebasket, and when opened, each envelope contained a description of a parcel of land. LaMere signed deeds gifting to Garth, Connie, and James the property each had drawn in the drawing.

LaMere also signed a deed for the property drawn by Robert, but on August 14, 2009, sent a letter to Shelton stating she had reasons to reconsider whether she would actually deliver the deed to Robert. LaMere asked Shelton to hold the deed until she informed him in writing what to do with it. On February 16, 2010, Shelton had a letter written, which LaMere signed, stating she had decided not to deliver the deed to Robert and asked for it to be returned to her. She stated she had decided that instead of gifting the property to Robert, she would transfer it to Garth, Connie, and James. The deed transferring the property to Garth, Connie, and James was drawn up and signed by LaMere. LaMere died on July 7, 2011.

On November 17, 2011, Robert filed suit against Garth, Connie, and James (defendants) claiming the inter vivos transfers of real estate arising from the drawing held on August 6, 2009, were the result of undue influence from the defendants. He asserted LaMere did not have the mental capacity to make the gifts. He also claimed one or more of the defendants were in a confidential relationship with LaMere.

The defendants filed a motion for summary judgment. Robert resisted the motion. A hearing on the summary judgment motion was held on August 27, 2013. The court determined Robert had not presented sufficient evidence of a confidential relationship between LaMere and the defendants. The court also determined Robert did not present competent evidence LaMere was susceptible to undue influence or that the transfer of property clearly appeared to be the effect of undue influence. The court granted defendants' motion for summary judgment. Robert now appeals.

## II. Standard of Review.

A district court's ruling on a motion for summary judgment is reviewed for the correction of errors at law. *Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 853, 858 (Iowa 2014). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "We examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in

order to establish the existence of questions of fact." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96 (Iowa 2012).

## III. Applicable Law.

In order to establish undue influence, a party must prove four elements: (1) the grantor was susceptible to undue influence; (2) the grantee had the opportunity to exercise such influence and effect the wrongful purpose; (3) the grantee had the disposition to unduly influence the grantor for the purpose of procuring an improper favor; and (4) the result clearly appears to be the effect of undue influence. *Mendenhall v. Judy*, 671 N.W.2d 452, 454 (Iowa 2003). These elements must be proved by clear, convincing, and satisfactory evidence. *Id.* "Evidence is clear, convincing, and satisfactory when there is no serious or substantial uncertainty about the conclusion to be drawn from it." *Id.* Undue influence may be proved by circumstantial evidence. *Id.* A party seeking to set aside an inter vivos transfer on the ground of undue influence must show the undue influence was "present at the very time the transfer is made." *Id.*

If the transfer in question is to a grantee standing in a confidential or fiduciary relationship to the grantor, the transfer is presumptively fraudulent and therefore presumptively the product of undue influence. *Id.* This rule applies where "one of the parties has a dominating influence over the other by reason of the affection, trust, and confidence of the latter in the former." *Id.* In order to rebut the presumption of undue influence, the grantee must "prove by clear, satisfactory, and convincing evidence that the grantee acted in good faith throughout the transaction and the grantor acted freely, intelligently, and voluntarily." *Jackson v. Schrader*, 676 N.W.2d 599, 605 (Iowa 2003).

**IV.    Discussion**

**A.**  The district court first determined the defendants had shown there was no genuine issue of material fact as to the issue of whether LaMere was in a confidential relationship with any of the three defendants, and defendants were entitled to a judgment as a matter of law on this issue.  The court found, "Other than Bobby's conclusory statements and speculation, the Court is unable to discern any allegations of material facts that could sustain the existence of such a confidential relationship."[1]

In discussing confidential relationships, the Iowa Supreme Court has stated:

> Confidential relationship is a very broad term and is not at all confined to any specific association of the parties to it.  In law it has been defined or described as any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party.  In its broadest connotation the phrase embraces those multiform positions in life wherein one comes to rely on and trust another in his important affairs.
>
> A confidential relationship arises whenever a continuous trust is reposed by one person in the skill and integrity of another, and so it has been said that all the variety of relations in which dominion may be exercised by one person fall within the general term of "confidential relation."

*In re Estate of Herm*, 284 N.W.2d 191, 199 (Iowa 1979).   A confidential relationship is "particularly likely to exist where there is a family relationship." *Mendenhall*, 671 N.W.2d at 455.   Whether there is a fiduciary or confidential

---

[1] The district court relied upon the unpublished case of *In re Estate of Otteros*, No. 07-1115, 2008 WL 2522128 (Iowa Ct. App. June 25, 2008).  We note in that case, however, the determination there was not a confidential relationship was made after a lengthy trial, not on a motion for summary judgment.  *Otteros*, at *3.

relationship depends upon the facts and circumstances of each case. *Stotts v. Eveleth*, 688 N.W.2d 803, 811 (Iowa 2004).

Our review of the evidence presented in support of and resistance to the motion for summary judgment shows the following facts. LaMere was usually brought to Shelton's law office by Garth, although at times James was also present. At times Garth and/or James was present during LaMere's discussions with her attorney, although she met with her attorney alone when final decisions were made. In a letter to LaMere from Shelton, dated February 24, 2010, he states, "Garth and J.C. [James] have indicated that they would like you to transfer the rest of it, to be split between Garth, J.C., and Connie only." In fact, LaMere did transfer the property that would have gone to Robert to Garth, James, and Connie.

In his deposition, Robert stated LaMere told him Garth "was writing her wills and telling her what to do." He stated he believed Garth and James made threats to LaMere, but was not aware of the specific threats. Robert also stated Garth pushed LaMere into having a farm sale that was disadvantageous to her for tax purposes. He stated he believed Garth and James were controlling LaMere.

In an affidavit, Robert stated that as time went on, Garth and James began to have more contact with LaMere and became involved in her personal and business affairs. Robert stated when he arrived for the drawing on August 6, 2009, LaMere, Garth, James, and Shelton were meeting privately, and he and Connie were excluded from the meeting. He stated that sometime after the meeting, LaMere asked him if he was happy with the land he had received.

Robert responded he had not received a deed for the farmland, and he stated LaMere "seemed to be confused."

Robert also noted that in December 2009 his access to water on land he leased from LaMere was turned off, in violation of the lease agreement. He asked LaMere to restore the water, and she refused. Robert stated he believed LaMere was acting on the directions of James or his son, James Clifford Davis. He stated he believed LaMere was not acting willfully or voluntarily in deciding to turn off the water. After Robert filed suit, LaMere directed that the water should be restored.

Jeffrey Davis, the son of Gary and grandson of LaMere, signed an affidavit stating he believed LaMere relied upon the assistance, advice, and decision making of Garth. Jeffrey stated that in December 2009 he asked LaMere to lend him $1000. She told him to contact Garth and discuss the matter with him. Jeffrey stated he believed LaMere relied heavily upon Garth and James to conduct and manage her business affairs.

Brian Davis, who was also a son of Gary and grandson of LaMere, stated in an affidavit that in 2007 or 2008 he asked LaMere for a loan of $4000. She advised him to discuss it with Garth. He stated on another occasion LaMere told him her doctor recommended she have surgery on her foot, but Garth had objected. Brian stated he believed Garth and James were substantially involved in LaMere's decision making with respect to her personal and business matters.

A fact question is generated if reasonable minds can differ on how the issue should be resolved. *In re Estate of Henrich*, 389 N.W.2d 78, 81 (Iowa Ct. App. 1986). In order to generate a genuine issue of material fact on the issue of

undue influence, more than a "scintilla" of evidence is required. *Id.* In determining whether there is a genuine issue of material fact on an issue, we afford "the nonmoving party every legitimate inference the record will bear." *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 657 (Iowa 2008).

We determine there is a genuine issue of material fact on the question of whether LaMere was in a confidential relationship with Garth and/or James. There is more than a "scintilla" of evidence LaMere had placed a continuous trust in the skill and integrity of Garth and/or James to conduct her personal and business affairs. The affidavits of Jeffrey and Brian, in addition to Robert's statements in his deposition and affidavit, present evidence that LaMere relied upon and was guided, in at least some of her decisions, by Garth and James. We conclude the district court improperly granted summary judgment to defendants on the issue of whether LaMere had a confidential relationship with one or more of the defendants.

**B.** As to the four factors required to establish a claim of undue influence, the district court determined defendants had shown there was no genuine issue of material fact on two of these factors. The court first found there was no genuine issue of material fact on the question of whether LaMere was susceptible to undue influence. The court found, "[Robert] has offered no competent material evidence that LaMere's mental state in 2009 made her susceptible to the undue influence alleged in his petition."

A party's mental and physical condition has a bearing on the issue of undue influence. *Mendenhall*, 671 N.W.2d at 461. A person in a weakened

condition is more readily subject to influence.[2]  *Id.*  "A higher degree of mental competency is required for transactions of ordinary business than is necessary for testamentary disposition of property."  *Id.*

Defendants presented a medical opinion from September 1, 1999, which stated LaMere had strokes in 1994 and 1995 and as a result she used a wheelchair.  LaMere was described as alert, oriented, and emotionally very labile.  The physician concluded LaMere was competent to handle her own affairs.  By affidavit Shelton stated LaMere was very strong-willed.  He stated LaMere was able to repeat the names of her children and the extent of her assets.  In affidavits Garth and Connie stated they believed LaMere was competent to transfer her property in 2009.

However, although LaMere knew the names of her children and the extent of her assets, it was only Shelton's "belief" that she was not influenced by anyone.  We also note that according to Shelton's office notes, LaMere was in a nursing home in November 2008, suggesting she was in need of care for mental or physical care or both.  The notes also reflect that on October 15, 2009, when LaMere delivered a handwritten letter to Shelton to hold-off delivering Robert's deed, both Garth and James were present.

In his deposition Robert stated LaMere had another stroke in about 2004, which decreased her mental capacity.  He testified he believed she no longer had

---

[2] In the ruling on the motion for summary judgment, the district court stated Robert conceded during oral argument that there was insufficient evidence to show LaMere was mentally incompetent at the time of the land transfers in 2009.  While LaMere may not have been mentally incompetent, if the evidence showed she was in a weakened condition, she may still have been susceptible to undue influence.  *See Mendenhall*, 671 N.W.2d at 461.

the ability to understand financial documents or the mental capacity to transfer her property. As noted above, in his affidavit, Robert stated LaMere seemed confused when he told her he had never received a deed for the farmland after the drawing in August 2009.

In Jeffrey's affidavit he stated that after her first stroke in 1994, LaMere was "physically weaker and less robust physically and mentally than she was prior to her stroke. At times she was not very alert and at times seemed to be confused when speaking about personal and business affairs." Jeffrey noted LaMere told him at one time that James had repaid a debt of $150,000 to her. Jeffrey knew the debt had not been repaid, but was forgiven as part of a settlement agreement.

We determine there is a genuine issue of material fact on the question of whether LaMere was susceptible to undue influence. LaMere had suffered two or more strokes and was nursing home bound, suggesting that she was at least dependent upon her caretakers, including those that transported her to Shelton's office. More importantly, Robert's deposition, his affidavit, and Jeffrey's affidavit provide support for the claim LaMere was sometimes confused about financial matters and therefore may have been susceptible to undue influence from the defendants.[3] For these reasons, the district court improperly determined Robert had not offered competent material evidence on this issue.

**C.** Finally, the district court determined defendants had shown there was no genuine issue of material fact on the question of whether the inter vivos

---

[3] LaMere also chose to make the inter vivos transfers against her attorney's advice as it would ultimately incur significant tax consequences, as opposed to a transfer upon her death.

transfer of land clearly appeared to be the effect of undue influence. The court determined Robert had offered only speculation and supposition in support of this issue.

Inequality of distribution in a transfer of property is a factor to be considered. *Wilson v. Wilson*, 34 N.W.2d 911, 915 (Iowa 1948). A transfer of property that is "'unnatural, unjust, or unreasonable' is a proper circumstance to be considered as tending to confirm the claim of undue influence." *In re Estate of Davenport*, 346 N.W.2d 530, 532 (Iowa 1984). While this element alone will not support a claim of undue influence, it is a factor to be considered. *Id.*

In his deposition, Robert noted that while LaMere had six children, she expressed the intent to divide her farmland among the four surviving children, and he expressed concern that the heirs of Gary and Duane were not included in the proposed distribution. Then, after the drawing for the farmland, only three of LaMere's children ended up owning all of the land. While this result may or may not have been the result of undue influence, it was an unnatural result, and so is a proper factor to be considered in support of Robert's claim. Considering this and the other evidence in the record, we determine there is a genuine issue of material fact on the question of whether the result of the inter vivos transfer of property clearly appeared to be the effect of undue influence.

**V.    Conclusions**

We have determined there is a genuine issue of material fact on the question of whether LaMere was in a confidential relationship with Garth and/or James. In considering the four factors necessary to support a claim of undue influence, the district court found Robert had not presented any competent

evidence on two of the factors. After reviewing the record, we reversed the district court's conclusions on these two factors. We determined there was a genuine issue of material fact on the question of whether LaMere was susceptible to undue influence. We also determined there was a genuine issue of material fact on the question of whether the result of the inter vivos transfer of property clearly appeared to be the effect of undue influence. Because the district court had already concluded there was at least circumstantial evidence to generate issues of material fact on the questions of whether defendants had the opportunity to exercise undue influence and whether they were disposed to unduly influence LaMere, we now conclude the district court improperly granted summary judgment on Robert's claims of undue influence.

We reverse the decision of the district court granting summary judgment to defendants on Robert's claim of a confidential relationship between LaMere and at least one of the defendants and his claim the inter vivos transfers of property were the result of undue influence. We remand to the district court for further proceedings.

**REVERSED AND REMANDED.**